Argued May 8, affirmed as modified; remanded October 16, 1975

## NICHOLES, *Appellant, v.* HUNT, *Respondent.*

541 P2d 820

256

*W. V. Deatherage* of Frohnmayer & Deatherage, Medford, argued the cause and filed a brief for appellant.

*Richard A. Stark* of Haviland, deSchweinitz, Stark & Hammack, Medford, argued the cause and filed a brief for respondent.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN,* TONGUE, HOWELL and BRYSON, Justices.

* Holman, J., did not participate in this decision.

BRYSON, J.

Plaintiff seeks a decree for the dissolution of a partnership pursuant to ORS 68.540(1).[1] Plaintiff alleged that defendant wrongfully excluded plaintiff from the partnership; that there be an accounting and prayed for a dissolution of the partnership and determination of each party's interest. Defendant filed an amended answer denying plaintiff's allegations and affirmatively alleged that plaintiff breached the partnership agreement and that defendant be allowed to continue the business pursuant to an "implied term" in the partnership agreement.

The trial court found that the parties had formed a partnership at will and that defendant, in good faith, had dissolved the partnership on May 27, 1973; that the partnership could be "terminated at will" and entered a decree ordering the dissolution of the partnership and the distribution of the partnership assets. Plaintiff appeals and defendant cross appeals.

We review de novo. Prior to 1972 defendant, as sole proprietor, was engaged in the manufacture and sale of lead shot for shotgun shells under the name West Coast Shot Manufacturing Company. Defendant had developed a "miner" and special equipment to recover used shot from trap shooting fields which was

---

[1] ORS 68.540(1):

"On application by or for a partner the court shall decree a dissolution whenever:

"* * * * *.

"(c) A partner has been guilty of such conduct as tends to affect prejudicially the carrying on of the business;

"(d) A partner wilfully or persistently commits a breach of the partnership agreement, or otherwise so conducts himself in matters relating to the partnership business that it is not reasonably practicable to carry on the business in partnership with him;

"* * * * *.

"(f) Other circumstances render a dissolution equitable.

"* * * * *."

then melted down to produce new shot for sale on the market.

In the spring of 1972 plaintiff met defendant in Medford, Oregon, and the parties orally agreed to form an equal partnership for the mining, manufacture, and sale of shot. Plaintiff was to purchase one-half of defendant's existing business for $50,000. It was also agreed that plaintiff would make an initial payment of $10,000 and transfer one-half interest in his airplane[2] to the partnership. The balance of $35,000 was to be reduced by annual payments of $5,000 together with interest at 7 percent. Defendant, being experienced, was to devote his best effort to the business. No written partnership agreement was executed.[3] However, the evidence and tax returns show that they operated as an equal partnership beginning May 29, 1972.

The record shows the original equipment was improved and upgraded and the new venture was a financial success but subject to considerable dissension between the partners. However, by December of 1972 the parties had "pretty well patched everything up * * *, everything was happy."[4] On May 28, 1973, approximately six months later, defendant informed plaintiff by phone that their business relation-

---

[2] The one-half interest in the airplane was valued at $5,000. The remaining one-half interest in the airplane was treated as an additional contribution of $5,000 by plaintiff, making a total capital contribution to the partnership of $110,000 (Note 3 of Exhibit Z prepared by Haskins & Sells).

[3] Defendant was responsible for the preparation of the necessary documents. According to defendant, none was prepared because the parties "never did come to any final agreement."

[4] By December of 1972 the partnership had improved its "miner" and realloying process. As a result, the business potential was promising. Gross sales for the first year were $604,348, with gross income of $131,995. Defendant also testified that gross sales for eleven months after May 31, 1973, were $650,000.

ship was at an end.[9] Following the telephone notice of dissolution, defendant sent plaintiff a letter which stated in part as follows:

"May 31, 1973

"* * * * *.

"Please accept this letter as notice of termination of our business relationship. This notice is meant to be effective whether our business relationship is characterized as an agreement to form a partnership, or a partnership. In either event, I will continue to operate West Coast Shot Company henceforth.

"* * * You are specifically not authorized henceforth to act on behalf of West Coast Shot Company or myself as employee, agent, or partner. This termination is to be effective upon today's date, May 31, 1973.

"* * * [T]he $35,000.00 balance was to be paid at $5,000.00 per annum with seven percent (7%) interest upon the unpaid balance. The first $5,000.00 payment, plus interest, was due May 1, 1973, and you have failed to make that payment.

"* * * * * *"

On June 4, 1973, plaintiff's attorney wrote to defendant stating:

"* * * * *.

"Our client feels you have wrongfully dissolved the partnership * * *.

"Pursuant to ORS 68.590 and ORS 68.600(2)(b), our client hereby elects to continue the business of the partnership under the same name by himself and hereby demands that you immediately give him possession of all of the partnership property for

---

[9] At trial, defendant testified that he terminated the partnership because plaintiff failed to carry out instructions, did not devote his full time to the business, and did not meet his annual payment of $5,000 for 1973. "Most of it was based on a year of bickering and arguing * * *."

that purpose. In addition, he demands that you submit an accounting of all the partnership affairs to date.

"* * * * * *."

After May 27, 1973, the defendant continued to operate the business but maintained a record of all transactions, assets and profits.

Each party contends that he is entitled to buy the 50 percent share of the other partner and continue the business as a sole proprietor. Based on the assignments of error of the respective parties, the general issues in this case are: the terms of the partnership agreement, the manner of dissolution, and the distribution of the partnership assets.

## TERMS OF PARTNERSHIP AGREEMENT

■ The partnership in this case is founded upon an oral agreement evidenced by certain exhibits and testimony offered. Generally this is sufficient to establish a partnership relationship. *See Harestad v. Weitzel,* 272 Or 199, 536 P2d 522 (1975). Plaintiff argues that the partnership was not one that could be terminated at will. Plaintiff concedes that there is no express agreement which establishes the duration of the partnership, but contends that a definite term can be implied from the fact that plaintiff was obligated to make seven annual payments on the balance of his capital contribution. Plaintiff relies on *Vangel v. Vangel,* 116 Cal App 2d 615, 254 P2d 919 (1953); *Zeibak v. Nasser,* 12 Cal 2d 1, 82 P2d 375 (1938).

■ These cases stand as exceptions to the general rule that a partnership is one at will in the absence of an agreement to the contrary. *Burke Mchy. Co. v. Copenhagen,* 138 Or 314, 319-20, 6 P2d 886 (1932); 6 Uniform Laws Annotated, Uniform Partnership Act § 31, at 379-81 (Master ed 1969); 59 Am Jur 2d, Part-

nership § 30 (1972). In both *Vangel* and *Zeibak* the court found that the partners had impliedly agreed to form a partnership of a specific duration, notwithstanding their failure to expressly provide therefor. For similar decisions, *see Drashner v. Sorenson,* 75 SD 247, 63 NW2d 255 (1954); *Meherin v. Meherin,* 93 Cal App 2d 459, 209 P2d 36 (1949); *Pemberton v. Ladue Realty & Const. Co.,* 237 Mo App 971, 180 SW2d 766 (1944); *Owen v. Cohen,* 19 Cal 2d 147, 119 P2d 713 (1941); *Zimmerman v. Harding,* 227 US 489, 33 S Ct 387, 57 L Ed 608 (1913). There are an equal number of cases wherein courts have refused to imply a fixed term. *See, e.g., Napoli v. Domnitch,* 18 App Div 2d 707, 236 NYS2d 549 (1962); *Frey v. Hauke,* 171 Neb 852, 108 NW2d 228 (1961); *Page v. Page,* 55 Cal 2d 192, 10 Cal Rptr 643, 359 P2d 41 (1961); *Rinke v. Rinke,* 330 Mich 615, 48 NW2d 201 (1951); *Seufert v. Gille,* 230 Mo 453, 131 SW 102 (1910).

■ A common rule can be drawn from the above-cited cases. Before the court is justified in implying a fixed term to an oral partnership agreement, there must be sufficient evidence to justify such a finding. *Page v. Page, supra,* 359 P2d at 43.

■ Plaintiff has the burden of proving the partnership agreement and that the oral partnership was for a fixed term by clear and convincing evidence. *Burke Mchy. Co. v. Copenhagen, supra* at 319; *Harestad v. Weitzel, supra;* 2 Rowley on Partnership 457, § 51.10 (2d ed 1960).

■■ In the instant case there is no evidence from which we can conclude that the parties had impliedly agreed to form a partnership of a definite duration. The partnership was a partnership at will and could be dissolved "[b]y the express will of any partner when no definite term or particular understanding is specified." ORS 68.530(1)(b). The trial court reached the same conclusion and did not err in this respect.

## MANNER OF DISSOLUTION

The second issue concerns the manner in which the partnership was dissolved. The evidence shows that defendant elected to and did exercise his right to dissolve the partnership pursuant to ORS 68.530-(1)(b) and fully notified the plaintiff of this election on the morning of May 28, 1973. This was confirmed in the letter previously quoted dated May 31, 1973. Prior to adoption of the Uniform Partnership Act, in *McKinnis v. Dodge et al*, 103 Or 9, 13, 203 P 876 (1922), this court held:

> "A partnership is dissolved by notice of one partner to his associates of his election to terminate the partnership. No particular form of notice is required * * *."

Nevertheless, plaintiff contends that the dissolution was in contravention of the partnership agreement and relies on *Page v. Page, supra* at 44, to support his contention that defendant, as a fiduciary, was obligated to exercise his power to dissolve the partnership in good faith.[6] *See also* Crane & Bromberg, Law of Partnership § 74(b), at 422 (1968); 1 Rowley on Partnership 587, § 31.1 (2d ed 1960).

■■ Plaintiff directs us to evidence produced at trial of an "unfair design" on defendant's part to "freeze out" plaintiff from a profitable enterprise. Defendant directs us to evidence of his good faith dissolution and the refusal of plaintiff to devote his full time to the business and failure to follow defendant's "major decisions." Assuming that there was

---

[6]

"A partner at will is not bound to remain in a partnership, regardless of whether the business is profitable or unprofitable. A partner may not, however, by use of adverse pressure 'freeze out' a co-partner and appropriate the business to his own use. A partner may not dissolve a partnership to gain the benefits of the business for himself, unless he fully compensates his co-partner for his share of the prospective business opportunity. * * *" 359 P2d at 44.

such a duty of good faith in this case, the evidence proves that defendant acted in good faith and did not act in contravention of the oral partnership at will. *See* Crane & Bromberg, *supra,* § 74, nn. 37-41, at 422. In *Timmermann v. Timmermann,* 272 Or 613, 624, 538 P2d 1254 (1975), we held:

> "A partnership at will may be dissolved without violation of the agreement between the partners by the express will of any partner when no definite term or particular undertaking is specified. ORS 68.530(1)(b), UPA § 31(1)(b).  *  *  *"

The trial court did not err in this respect, and we find under the facts of this case that defendant dissolved the partnership in good faith as of May 27, 1973.

## DISTRIBUTION OF PARTNERSHIP ASSETS

After testimony was adduced, the court ordered an additional accounting to be provided by Haskins & Sells, certified public accountants. Thereafter, written findings were made which provided in part:

> "*  *  * [P]laintiff is entitled to the value of his interest in the partnership assets ascertained as of the date of dissolution together with a share in the profits made thereafter in the proportion that his property bore to the whole of the partnership as of May 27, 1973  *  *  *.

> "*  *  * [T]hat the partnership assets were valued in the sum of $182,840.00 on May 27, 1973. That plaintiff's interest therein was in the sum of $89,432.00. That the plaintiff owed defendant the sum of $35,000.00 on the purchase price of the partnership. In subtracting plaintiff's obligation [for unpaid capital contribution due defendant] from his interest in the partnership, the court finds that the value of plaintiff's interest in the partnership assets on May 27, 1973 was the sum of $54,-432.00.

"Therefore, the court finds that plaintiff had a thirty percent interest in the partnership assets on May 27, 1973. Therefore, plaintiff is entitled to thirty percent of the net profit [defendant's share would be 70 percent] earned by the partnership from the date of the dissolution until June 30, 1974. The court finds that the net income from May 27, 1973 to June 30, 1974 was the sum of $139,358.00. * * *"

Plaintiff contends that he is entitled to 50 percent of the net profit following dissolution on May 27, 1973. The defendant, in his cross appeal, contends that plaintiff has no right to post-dissolution profits.

Following the dissolution the partnership was continued. In *Timmermann v. Timmermann, supra,* we held:

"If the withdrawing partner allows the business to continue, the value of his interest in the partnership as of the date of dissolution is ascertained. He then has the right to receive, at his option after an accounting, either the value of his interest in the partnership with interest or, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership. * * *" (Citing Crane and Bromberg, Law of Partnership 496-97, § 86 (1968)).

On May 27, 1973, the parties were equal partners. In computing plaintiff's post-dissolution profits, the trial court erred in reducing plaintiff's interest by $35,000, plaintiff's personal obligation to defendant for unpaid capital contributions, before computing plaintiff's share in post-dissolution profits and thereby arrived at the 30 percent share for plaintiff. At the time the court terminated the partnership, any personal obligation on the part of plaintiff to defendant should have been treated as a set-off against plaintiff's final balance after the partnership property and post-dissolution profits had been divided between the

two partners.[7] Money furnished to one partner by another partner to enable the latter to meet his obligation to the partnership is a personal claim and has nothing to do with the partnership accounting. *Carrey v. Haun et al,* 111 Or 586, 593, 227 P 315 (1924); *Bates v. Lane,* 62 Mich 132, 28 NW 753, 754 (1886); *Hill v. Beach,* 12 NJ Eq 31, 42 (1858); 68 CJS Partnership § 409. The general rule for apportioning any profit so earned is stated in Annot., 55 ALR2d 1391, § 32, at 1414:

"* * * [O]ne claiming an interest in profits earned subsequently to the dissolution of a partnership is entitled to such share of the profits as his interest in the firm's capital bears to the total capital, or, in other words, such share of the profits as can rightly be attributed to the continued use of his property or capital in the business. * * *"

■ Next, defendant cross appeals, contending that he is entitled to compensation for services rendered after dissolution for winding up of the partnership. A partner is generally allowed compensation only for services necessary to the winding up of the partner-

---

[7] The correct computation is:

| | |
|---|---:|
| Value of plaintiff's interest in partnership — May 27, 1973, date of dissolution | $ 89,432.00 |
| The plaintiff had withdrawn salary from the partnership in excess of that withdrawn by defendant. Thus plaintiff's $89,432 equals 48.91 percent of the partnership assets | |
| Net profit earned—May 27, 1973, through June 30, 1974 .................... $139,358.00 | |
| Plaintiff's 48.91 percent of net profit—May 27, 1973, through June 30, 1974 | 68,160.00 |
| | $157,592.00 |
| Value of aircraft distributed to plaintiff | $ 10,000.00 |
| | $147,592.00 |
| Set-off, amount due defendant by plaintiff on original purchase price | 35,000.00 |
| Net balance | $112,592.00 |

ship after dissolution. ORS 68.310(6);[®] *Wickstrom v. Davis,* 211 Or 254, 283, 315 P2d 597 (1957); *Mayer/ Kleinknecht v. Bassett,* 263 Or 334, 342, 501 P2d 782 (1972).

■ As we stated earlier, defendant continued the business, presumably toward the winding up of its affairs, under the belief that he was entitled to do so. The evidence tends to show that defendant proceeded to identify shot to certain partnership sale contracts, invested the proceeds in time certificates and discharged most of the partnership debts. Also, there is evidence that the defendant had on hand some shot which he owned personally. It was not included in the original partnership inventory and he processed and sold this shot for his own benefit after giving notice of dissolution. Unfortunately, the record is not clear and is inconclusive as to the time spent by defendant in the winding up of its affairs. In *Timmermann v. Timmermann, supra,* we held:

> "* * * [O]ne who continues the partnership business after dissolution and contributes substantial labor and management services thereto is entitled to compensation for that share of the profits which are attributable to such services. * * *.
>
> "* * * * * *.
>
> "* * * Thus, it will be necessary for the trial court to hold a hearing and determine the value of each continuing partner's services to the partnership." 272 Or at 630, 633.

We should point out that the facts in *Timmermann* and the case at bar are considerably different. In *Timmermann,* a partnership at will, the surviving part-

---

® ORS 68.310(6):

"No partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs."

ners maintained the business, after one partner elected to withdraw and dissolve the partnership, and increased the net assets. In the present case the defendant gave notice of dissolution to plaintiff at a time when the partnership was earning substantial income. The facts in this case show that the defendant originated the business and formed an equal partnership with plaintiff with the understanding that defendant was to make all "major decisions." We are of the opinion that the defendant is entitled to reasonable compensation for his services rendered in winding up the partnership affairs. Such compensation should not be excessive and it should be based on the conduct that was necessary to complete the winding up of the partnership affairs, having in mind the salaries the partners had been drawing.

Defendant also contends that the plaintiff has come into equity with unclean hands. We conclude that the conduct complained of, plaintiff building a "miner" for a Nebraska company after the partnership dissolution, bears no relationship to the subject matter of this suit. *See McKee v. Fields,* 187 Or 323, 326, 210 P2d 115 (1949).

■ Plaintiff further contends that the court erred in ordering distribution of the assets based on book value rather than market value. The court, in making distribution of the partnership assets to plaintiff and defendant on the date of dissolution, relied upon the accounting rendered as of May 27, 1973, and the testimony of the witnesses in connection therewith.

Our review of the record discloses that neither party offered competent evidence of the market value of the partnership assets.

Although plaintiff testified as to the value of the partnership assets, on cross-examination plaintiff admitted that he really didn't know the value of the

physical assets, the plant building, or the two acres of land on which it was located. The certified public accountants who rendered the various accounting exhibits examined all of the partnership records, including invoices for purchases, sales tickets, and checks issued for purchases. They used the partners' agreed valuation figures and accepted the sum of $110,000 as a reasonable valuation for the partnership assets as of May 29, 1972, the date the partnership was formed. We believe this is the best evidence offered, and the court had no alternative but to accept this evidence. We find no error in this respect.

■ Plaintiff also contends that he is entitled to purchase defendant's interest in the partnership and continue the same or that the dissolution requires a liquidation and sale of assets before distribution. There is no express provision in ORS chapter 68 (Uniform Partnership Act) which establishes liquidation by sale as the exclusive mode of distributing partnership assets after dissolution. Although the basic rule is that any partner has the right to force liquidation by sale, the rule has been subject to criticism under facts similar to those in this suit.

"While situational variants make it dangerous to generalize, the liquidation right will be injurious to the business in many, perhaps in most, cases. One authority has described it as 'ruinous.' Whether it really is depends on the relative value of the business sold and the business retained. Such values are partly subjective and partly influenced by specific facts. But, it is rare that a small business, which is the kind most partnerships are, can be sold for as much as the owners think it is worth to themselves. This is true if it is disposed of intact as a going concern, and even more so if it is sold piecemeal. In short, the likelihood of loss of value is great enough to require every partner-

ship to look to the ways of denying or restricting the liquidation right. * * *

"* * * * *.

"* * * The partners are frequently the best prospects for purchase. They have knowledge of the business, experience in its operations, and, perhaps, confidence in its future. They have an existing financial and psychological stake in it, and the corollary opportunity to acquire the remaining interest for smaller outlay than a third party would need in order to buy the whole thing. The substantial problems of selling a business to a stranger for a good price may be avoided by a sale to an existing partner if such can be done on price and terms fair to the outgoing interest." Bromberg, *Partnership Dissolution — Causes, Consequences, and Cures,* 43 Tex L Rev 647-48, 649 (1965). (Footnotes omitted.)

Courts, both prior and subsequent to adopting the UPA, have, under certain circumstances, relied upon their equitable powers to distribute partnership assets without resort to a sale.

In *Rinke v. Rinke,* 330 Mich 615, 48 NW2d 201, 207 (1951), a suit for dissolution of a partnership, the Michigan Supreme Court refused to order a liquidation sale to a third party and interpreted the Uniform Partnership Act by stating

"* * * [t]he decree of the trial court provided for dividing the assets of the partnerships rather than for the sale thereof and the distribution of cash proceeds. Appellants insist that such method of procedure is erroneous and not contemplated by the uniform partnership act. * * * Construing together pertinent provisions of the statute leads to the conclusion that it was not the intention of the legislature in the enactment of the Uniform Partnership Act to impose a mandatory requirement that, under all circumstances, the

assets of a dissolved partnership shall be sold and the money received therefor divided among those entitled to it, particularly so, as in the case at bar, where there are no debts to be paid from the proceeds. The situation disclosed by the record in the present case is somewhat unusual in that no one other than the former partners is interested in the assets of the businesses. In view of this situation and of the nature of the assets, we think that the trial court was correct in apportioning them to the parties. * * *"

The position taken by the Michigan Supreme Court is not an isolated one.

"* * * [I]n some circumstances and in jurisdictions where the Uniform Partnership Act is in effect, surplus assets have been apportioned among the partners, and apart from the act distribution of the surplus partnership stock in kind has sometimes been made by the court in cases where there were no firm debts and a division in kind could be fairly and equitably made. * * *" (Footnotes omitted.) 1 Rowley on Partnership, § 38.0 at 737.

In *Gregg v. Bernards,* 250 Or 458, 443 P2d 166 (1968), a suit for dissolution of a partnership, plaintiff appealed from a decree which dissolved the partnership and vested in defendants the title to the partnership assets upon payment by them to plaintiff for the value of his partnership assets and also his share of the profit. Without expressing our reasoning, we held that the trial court reached the correct conclusion and affirmed. *See Logoluso v. Logoluso,* 233 Cal App 2d 523, 43 Cal Rptr 678 (1965) ; *Goergen v. Nebrich,* 12 Misc 2d 1011, 174 NYS2d 366 (1958) ; *Kelley v. Shay,* 206 Pa 208, 55 A 925 (1903) ; 68 CJS 987, Partnership § 438.

In the case at bar, payment of creditors is not a problem. The partnership debts had been paid by the defendant, the managing partner who started the busi-

ness. A large portion of the assets has been reduced to cash and bank time certificates of deposit. The audit on which the trial court based its distribution of assets included a substantial sum for "good will." Although plaintiff contributed to the success of the shot manufacturing business there is evidence that plaintiff was not always attentive to the business or to the decisions and recommendations of defendant, the managing partner.

We conclude, as defendant contends and as the trial court found, that the equities lie with the defendant in this case. Further, since there was no evidence regarding the value which the partnership assets might command on the market, it is difficult for us to determine whether a sale would be beneficial or prejudicial to the respective parties. As earlier described, this is a unique, or unusual, business which requires particular knowledge of the remanufacturing process and ability to repair and operate the necessary machinery. Plaintiff argues that he is entitled to purchase the 50 percent share of the defendant but this is no answer to the problem that confronted the trial court. The defendant conceived and designed the machinery and the method of operation, which was successfully operated for a number of years before formation of the partnership at will. Plaintiff is not precluded from engaging in a like or similar business.

Under these circumstances we find that the assets were properly apportioned subject to the modifications herein set forth.

The judgment of the trial court is affirmed as modified and remanded for a determination of plaintiff's share of the profits from the date of the dissolution to the date of the accounting and to determine reasonable compensation for defendant in winding up the partnership affairs.