MARTIN et ux,
*Respondents - Cross-Appellants,*

*v.*

MARTIN et ux,
*Appellants - Cross-Respondents,*

DIRECTOR OF VETERANS' AFFAIRS et al,
*Respondents,*

*v.*

MARTIN et ux,
*Respondents.*

(4036, A26145)

712 P2d 820

John R. Faust, Jr., argued the cause for appellants - cross-respondents. With him on the briefs was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Dennis Karnopp, Bend, argued the cause for respondents - cross-appellants. With him on the briefs was Johnson, Marceau, Karnopp & Petersen, Bend.

Dave Frohnmayer, Attorney General and Robert M. Atkinson, Assistant Attorney General, Salem, waived appearance for respondents State of Oregon, represented and acting by the Director of Veterans' Affairs, Department of Veterans' Affairs.

The Travelers Insurance Company, Salem, waived appearance.

James B. Minturn, Prineville, argued the cause for respondents Kenneth Martin and Elsie Martin. With him on the brief was Van Voorhees, Larson & Dixon, Prineville.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This action was brought by Robert and Sharon Martin (plaintiffs) against Leroy (Sharon's brother) and Catherine Martin (defendants) for dissolution of a partnership, declaration of rights in real property, partition of real property and an accounting. A supplemental complaint asked damages for conversion. Leroy and Catherine answered and counterclaimed against Kenneth and Elsie Martin (parents of Leroy and Sharon) and Robert and Sharon Martin, for a declaration of a partnership between all of them and for an accounting.

Defendants appeal the trial court's holding that their interest in the profits from the "Homeplace" partnership (Homeplace) terminated at the end of the 1981 crop year. They also appeal the trial court's division of profits in the dissolution and winding up of the "Blaylock Place and Smith Place" partnership (Blaylock/Smith). Plaintiffs cross-appeal the values assigned to the properties in the Blaylock/Smith dissolution and winding up. On *de novo* review, we affirm in part, reverse in part and remand on the appeal and affirm on the cross-appeal.

Kenneth and Elsie Martin (the Kenneth Martins) are the owners of the Homeplace property. Plaintiffs and defendants have engaged in a joint farming operation with the Kenneth Martins on Homeplace. The Homeplace property itself was never considered an asset of the joint operation. All of the individual parties have farmed and raised livestock on the Homeplace property without any written agreement since 1962. Income was distributed 50 percent to the Kenneth Martins, 25 percent to plaintiffs and 25 percent to defendants. Expenses have been shared in the same way. The Kenneth Martins furnished the land, about 4700 acres, and paid the taxes. Robert and Leroy did the bulk of the work. Each couple separately owned some cattle. The cows were kept together, with each couple receiving the full value of any cow sold which belonged to it. Any calves were treated as belonging to the joint farming operation, and profits were split proportionately.

In the early years, the Kenneth Martins owned all of the equipment. As new equipment was purchased, or repairs were made on old equipment, each couple was charged its

proportional share of the cost on its account. Later plaintiffs and defendants purchased equipment on a 50-50 basis. Each couple also purchased some equipment on its own.

■ In 1967, Robert and Leroy acquired the 635 acre Blaylock property.[1] In 1971, Leroy purchased the 2200 acre Smith property, to farm with Robert. Plaintiffs and defendants consider themselves co-owners of that parcel.[2] Plaintiffs and defendants jointly farmed the Blaylock/Smith properties without a written agreement and without the participation of the Kenneth Martins.

Kenneth kept an account of all the income and debts of both joint farming operations through 1978. From 1962-1979, the parties filed partnership tax returns. After 1979, they filed individual tax returns; apparently that was done for Social Security purposes.[3] Kenneth still kept accounts for all of the parties, including records for Blaylock/Smith. In 1978, he ceased his accounting because plaintiffs and defendants failed to provide him with all of the necessary records.

In the last few years, Leroy had done nearly all of the work on Smith, and Robert had done nearly all the work on Blaylock. In 1980, a dispute arose between plaintiffs and defendants. Before then, Robert harvested the crops on

---

[1] Financing for the purchase of Blaylock was provided in part by Elsie Martin, who made the down payment. However, the Kenneth Martins have never claimed any interest in the Blaylock parcel and have charged the accounts of plaintiffs and defendants with any payments the Kenneth Martins made in obtaining the Blaylock property for their children.

[2] Leroy purchased the Smith property solely in his name in order to obtain a veteran's loan. Subsequently, he executed a deed conveying an undivided one-half interest in Smith to plaintiffs. The deed has not been recorded and is held by Leroy's attorney. Leroy and Robert each contributed one-half of the mortgage payments.

There was conflicting testimony at trial as to whether Robert had in fact paid his share of the down payment and mortgage and other expenses relating to the Smith property; Leroy claimed that plaintiffs had not paid their share and that Smith, therefore, was not equally-owned partnership property. We find that the parties intended the purchase to be part of their equal partnership and that they treated the property that way. The issue of money owed, if any, can be addressed in the accounting. *See Nicholes v. Hunt,* 273 Or 255, 265-66, 541 P2d 820 (1975).

[3] Beginning in 1980, the Kenneth Martins were eligible for Social Security. Their interest in the partnership, as it had been up until that time, would have prevented them from collecting Social Security. As a result, the parties no longer filed partnership returns and began to claim that the children had most of the control in running the partnership business.

Blaylock, Leroy harvested the crops on Smith, and each party had the crops delivered to a storage facility. The crop was placed in the name of the person who had delivered it, but arrangements were made for each party to be able to sell one-half of it and to collect the sale proceeds. When Leroy harvested the 1980 crop on Smith, he had it placed in his name at the storage facility and made arrangements providing that, when Robert sold his half, the check would be made payable to Leroy, who then would pay Robert whatever was due him. Leroy chose this method, because he claimed that Robert had been late making the mortgage payments on Smith and he wanted to make sure that funds were available to make the next payment on time. As a result, Robert delayed selling until he could be assured that he would get the proceeds from the sale. By the time the crop was sold, Robert claimed that the price had dropped substantially.

In October, 1980, plaintiffs sued defendants for dissolution of Blaylock/Smith, partition of those properties and an accounting. In November, 1980, defendants joined the Kenneth Martins as third-party defendants, asking for a declaration of a partnership. Plaintiffs filed a supplemental complaint for conversion against defendants regarding the 1980 crop dispute. On March 6, 1981, the Kenneth Martins notified plaintiffs and defendants that the joint farming operation of Homeplace was terminated and that they could no longer farm there. The Kenneth Martins then gave Robert permission to continue farming Homeplace. Leroy was not allowed to participate in the operation of Homeplace at any time after March, 1981, or to take part in the seeding in 1981 for the 1982 crop. However, defendants' seed wheat and equipment in which they had an interest were used to farm Homeplace.

In a pretrial hearing, the parties recorded their understanding of a *pendente lite* arrangement that Robert would continue to farm Blaylock, Leroy would continue to farm Smith, all parties would arrange a schedule for the use of jointly owned equipment at all properties, including Homeplace, and all parties would keep an account of their income and expenses. On September 22, 1982, the trial court held that the Homeplace partnership had been dissolved as of 1981 and ordered an accounting through the end of the 1981 crop year. The court approved the accounting maintained by Kenneth

for the joint farming operation on Homeplace through 1978 and granted a judgment in favor of the Kenneth Martins and against defendants in the sum of $13,477.69, the amount shown due by the accounting.[4] Insofar as Homeplace was concerned, defendants were awarded only the rental value of their interest in partnership property used to farm Homeplace after the 1981 dissolution of the partnership, and the court ordered that they be reimbursed for their share of the seed used in the 1982 crop on Homeplace.

The court also dissolved Blaylock/Smith effective immediately, awarded the Smith property to defendants and the Blaylock property to plaintiffs, adjusted their accounts for differentials in the values of and encumbrances on the two properties and ordered an accounting between them through 1982, directing that they share profits and expenses on a 50-50 basis. The court also awarded plaintiffs $1,237.20 in damages for conversion against defendants. By a supplemental judgment, the court ordered that that amount not be awarded as conversion damages, but that it be considered in the accounting as money due from defendants to plaintiffs in the Blaylock/Smith winding up. The accounting was completed, and the final decree winding up Homeplace and Blaylock/Smith was entered in August, 1984.

Defendants contend that the trial court erred in awarding them no interest in the profits of the partnership after the end of the 1981 crop year. The court found that the partnership had been dissolved as of 1981. Defendants argue that by only awarding them reimbursement for their seed wheat used in planting the 1982 crop and the reasonable rental value of their share of the machinery used on Homeplace in 1982, the trial court had treated the 1981 dissolution as also being a termination and winding up of the partnership and that that action was error. The Kenneth Martins and plaintiffs contend that the joint farming operation on Homeplace was not a partnership but a share-crop arrangement, that the arrangement was terminated after the notice given in March, 1981, and, therefore, that no profits were due after the 1981 crop year.

---

[4] The court did provide that, if defendants wished to challenge the accounting for the period before 1978, they could do so at their own expense. They have not done so.

■ The first issue is whether the joint farming operation on Homeplace was a partnership. We hold that it was. ORS 68.110(1) defines a partnership as "an association of two or more persons to carry on as coowners a business for profit." ORS 68.120(4) provides that, in determining whether a partnership exists,

"the receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business * * *."

In this case the parties agreed that they would carry on the business together, that any equipment or supplies acquired would be owned by all the parties on a shared basis, that all profits would be shared on the same basis and that all expenses also would be shared the same way. Each party had the right to exercise some control over the business. Therefore, the operation was a partnership. ORS 68.110(1); *Hayes v. Killinger,* 235 Or 465, 471, 385 P2d 747 (1963). The fact that the land which they were farming was not an asset of the partnership does not change the result. The partnership was one for the operation of the farming business on land owned by the Kenneth Martins.

■ The next question is whether the trial court erred in terminating defendants' interest in the profits of the partnership after the 1981 crop year. We hold that it did. ORS 68.520 provides:

"On dissolution the partnership is not terminated, but continues until the winding up of the partnership affairs is completed."

Defendants contend that, although the partnership was dissolved in 1981, they were entitled to share in the profits after the 1981 crop year until the final decree of termination and winding up was entered. *See Nicholes v. Hunt,* 273 Or 255, 265-267, 541 P2d 820 (1975); *Timmerman v. Timmerman,* 272 Or 613, 627-629, 538 P2d 1254 (1975). Plaintiffs and the Kenneth Martins contend that *Timmerman* and *Nicholes* do not apply, because those cases involved a continuing partnership. They contend that the agreement to farm Homeplace was an agreement on a year-to-year basis. Therefore, they argue that when the partnership was dissolved at the end of the 1981 crop year the only thing left to do to wind up the partnership was to distribute the profits for that crop year.

They argue that the farming operations that took place in seeding the 1982 crop and other operations conducted after the end of the 1981 crop year involved a different farming partnership. We disagree.

The partnership was dissolved in 1981 when Elsie notified Robert and LeRoy that the joint farming operation was terminated. However, the seeding that was done for the 1982 crop year and the other farming operations that took place after the end of the 1981 crop year involved the use of seed wheat and equipment that was owned as partners by defendants. Because the partnership did not include ownership of the Homeplace land, the assets of the partnership were the seed and equipment, in which all parties held interests. Those assets were acquired and produced by the partnership before its dissolution. As a result, defendants were entitled to have their interest in the assets determined as of the date of dissolution. Further, they were entitled to either the value of their share of the partnership property together with interest or, at their election in lieu of interest, the proportion of the profits earned by the use of the partnership assets that relates to their ownership of the assets on the date of dissolution. That was not done. Therefore, we remand for determination of the value of the assets on the date of dissolution, determination of defendants' share of those assets and determination of the profits attributable to the use of those assets from the date of dissolution to the termination and winding up of the partnership.

Defendants next contend that neither the Kenneth Martins nor plaintiffs should be allowed any compensation for their services in winding up the Homeplace partnership. They contend that, because Leroy was wrongfully excluded from participating in the winding up, the other partners should be denied any extra compensation for their services. We disagree.

■■ The Kenneth Martins owned the Homeplace property on which farming operations were carried out. Defendants had no interest in the property. The Kenneth Martins had the right to exclude anyone from their property. Furthermore, the partnership was one at will. There was no wrongful dissolution; the partnership could be dissolved at any time by any of the partners. As a result, the exclusion of Leroy from participation was not unlawful.

234

■ In *Timmerman v. Timmerman, supra,* the Supreme Court held that the court erred in not providing compensation for the partners who participated in the winding up of the partnership.

"[O]ne who continues the partnership business after dissolution and contributes substantial labor and management services thereto is entitled to compensation for that share of the profits which are [sic] attributable to such services." 272 Or at 630.

In the case of farming operations, substantial services are required in carrying on the business. While the Kenneth Martins' and plaintiffs' exclusion of Leroy is certainly nothing to be rewarded, they should be permitted reasonable compensation for the labor and services they provided.

Defendants also contend that the trial court erred in the final accounting on Blaylock/Smith. They contend that the court erred in splitting the income and expenses on a 50-50 basis, that Leroy should be awarded a fee for winding up Smith and that the award for damages for conversion of the 1980 wheat crop, later changed to be an amount due in the accounting, was erroneously charged against his account. Plaintiffs contend that the distribution was correct and that the damages were not awarded as conversion damages, but were an appropriate charge against the account.

■ The first question is whether the trial court erred in directing that income and expenses for the Blaylock/Smith partnership[5] be divided 50-50. Defendants contend that the court should have used the accounting procedure set out in *Timmerman v. Timmerman, supra,* and should have determined the proportion of each partner's interest in the assets of the partnership on the date of dissolution, September 22, 1982, and then should have awarded the income on the basis of their proportional shares, with an allowance for the services of winding up the partnership. Plaintiffs contend that the trial court determined that the partners each owned an undivided one-half interest in all of the partnership assets, including the Blaylock and Smith properties and that, therefore, the distribution of income and expenses on a 50-50 basis was appropriate. We agree with plaintiffs.

---

[5] The joint farming operation on Blaylock/Smith included the same characteristics as that on Homeplace and was also a partnership.

The parties agree that the Blaylock and Smith properties were purchased on a 50-50 basis and that the equipment purchased by the partnership also was purchased on a 50-50 basis. Before the conflicts, each party kept a record of the income and expenses on the parcel it was farming and charged or credited the other party with 50 percent of that amount. While it may be true that plaintiffs were not current in their payments to defendants with respect to expenses incurred in the operations on the Smith place or that defendants were not current in their payments to plaintiffs with respect to expenses incurred in the operations on Blaylock place, those amounts were considered in the accounting. *See Nicholes v. Hunt, supra* 273 Or at 265-66. The trial court's order merely required the master to divide all income and expenses involved in the operations on both properties on a 50-50 basis and to treat the partners as equal owners of all assets. Because the partnership had been formed on a 50-50 basis and there was no contrary agreement, that order was not error.

■ Defendants also contend that they should be allowed compensation for Leroy's work in winding up on the Smith property. We agree. Defendants are entitled to compensation for the reasons set out above with respect to the winding up of the Homeplace partnership.

■ Defendants finally contend that the trial court erred in holding that they owed plaintiffs $1,237.20 as a result of the 1980 crop dispute. They point out that the trial court initially found that the amount was due as damages for conversion but that it later ordered that the sum not be conversion damages but be treated as money due from defendants in the accounting in the Blaylock/Smith dissolution. Defendants argue that, without new findings, the court could not order that such a sum be paid. Plaintiffs contend that the trial court recognized its error in awarding conversion damages[6] and, instead, determined that it should be due in the accounting because Leroy caused the loss. Plaintiffs further argue that it was appropriate for the trial judge to make such a finding. We disagree.

Although the practice had been for the parties each to

---

[6] One partner may not sue another partner for conversion related to the partnership business. The proper remedy is an action for an accounting. *Corkum v. Lenske,* 239 Or 290, 397 P2d 542 (1964).

sell one-half of the crop from each property and to obtain the proceeds from that sale, the property was partnership property. Leroy did not convert the property to personal use. He made the arrangement as a means to ensure proper payment of the mortgage on the property he was farming. Further, he did not prevent Robert from selling his crop. Although the money would have been channeled through Leroy, Robert was still able to sell. The testimony showed that, when Robert wanted to sell his share of the Smith crop, the grain elevator operator contacted Leroy, who instructed him to sell, but to make the check payable to Leroy, and that Leroy said he would pay Robert. The decision not to sell, resulting in a delay during which the price fell, was a decision Robert made for himself. No amount due should have been awarded because, as a matter of law, there was no conversion.

■ On cross-appeal, plaintiffs assign error to the trial court's valuation of the Blaylock and Smith properties. Blaylock consists of 633 acres; 531 of crop land, 99 of pasture and three in the farmstead site. It has a proven crop yield of 25 bushels per acre. Smith consists of 2,272 acres; 1,055 of crop land, 1,114 of pasture and three acres in the farmstead. It has a proven crop yield of 24 bushels per acre. At trial, plaintiffs' expert witness, a professional appraiser, testified that Blaylock had a value of $147,900 and Smith had a value of $323,300. Defendants presented no expert witnesses. Their witnesses included two local farmers. One valued Blaylock at $190,000 and Smith at $250,000. The other valued Blaylock from $192,000 to $208,000 and Smith from $240,000 to $250,000. The trial court set the values of the two properties at $190,000 for Blaylock and $250,000 for Smith. Plaintiffs contend that it was error for the trial court to rely on the testimony of the two farmers. We disagree. The trial court stated:

> "The question then becomes one of value of the respective properties. There is considerable difference in the testimony. Plaintiffs rely upon a professional appraiser * * * with all of the standard qualifications. [Defendants] rely upon the opinions of a couple of ranchers * * * with long experience in dirt farming in the area and in observing purchases and sales in and around the area where the land in question is situated. Taking everything into consideration the Court finds the latter two gentlemen more qualified and credible than the former."

We find no error.

On appeal, affirmed in part; reversed in part; and remanded for further proceedings not inconsistent with this opinion. Affirmed on cross-appeal.