Anthony **PAPPAS**, Pro Se, Plaintiff,

v.

George **ARFARAS**, et al., Defendants.

No. B–90–326 (GLG).

United States District Court,
D. Connecticut.

Sept. 30, 1998.

Anthony Pappas, Riverside, CT, pro se.

Jeffrey R. Hellman, Zeisler & Zeisler, P.C., Bridgeport, CT, for George Arfaras, Irene Arfaras, A–C Associates, Inc., Cedar Mill Farms Ltd., Newtown Sports Properties Ltd. Partnership, Newtown Sports Center, Inc., Maria Arfaras, Nicholas Arfaras, Patricia Denlinger, Holly Larson, Scott Larson, Tracy Larson, Eileen Migiano, Kathy Pappas.

T. Stevens Bliss, Resha, Smith & Goldberg, Danbury, CT, for Newton Sports Center Ltd. Partnership.

Jeffrey R. Hellman, Zeisler & Zeisler, P.C., Bridgeport, CT, T. Stevens Bliss, Resha, Smith & Goldberg, Danbury, CT, for Arthur Polstein, Maryann Polstein, Maria Vovou.

Jeffrey R. Hellman, Zeisler & Zeisler, P.C., Bridgeport, CT, Carl R. Ajello, Ansonia, CT, for Edward Bednar.

Jeffrey R. Hellman, Zeisler & Zeisler, P.C., Bridgeport, CT, Daniel Shepro, Willinger, Shepro, Tower & Bucci, Bridgeport, CT, for Irene Boubaris, Nick Boubaris, Grillos, George Michael, Pauline Grillos.

## MEMORANDUM DECISION

GOETTEL, District Judge.

### INTRODUCTION

This case arises from the dissolution of a limited partnership which had been formed for the purpose of acquiring approximately ninety acres of raw land in Newtown, Connecticut and developing this land into two-acre plot, single-family home subdivisions. Several of the defendants moved for summary judgment and Magistrate Judge William I. Garfinkel issued a recommended ruling on June 12, 1998. The Magistrate recommended granting the summary judgment motion of defendant Irene Arfaras on all counts, except counts four and five; denying the partial summary judgment motion of defendant George Arfaras on counts four, five, and seven; granting in part and denying in part defendant George Arfaras' partial summary judgment motion on count 13; and denying the cross-motions for summary judgment of defendants Michael Grillos, Pauline Grillos, Nick Boubaris, and Irene Boubaris, in which defendant Edward J. Bednar joined, on count thirteen.

The parties now raise several objections to the recommended ruling. Plaintiff Anthony Pappas objects to the recommended ruling on the distribution of partnership assets after dissolution (count thirteen) and on the acts of fraud (count seven). Defendants/cross-claimants Grillos and Boubaris also object to the recommended ruling on count thirteen. At the outset, we note that the parties object only to portions of the recommended ruling. Thus, this Court is not required to make a *de novo* determination on the entire proposed decision. Fed.R.Civ.P. 72(b); Local R. Mag. JJ. 2(b). Familiarity with the recommended ruling is presumed, and we rely on that decision for pertinent background facts and legal principles.

This Court adopts, approves, and ratifies the recommended ruling as modified herein. We also DENY plaintiff's objections **(document # 258)** and the objections of the defendants/cross-claimants **(document # 259).** We write separately, however, to clarify some points of law on how the limited partnership's assets should have been distributed

and to specifically address the limited partners' objections.

## I. SUBSTANTIVE MODIFICATIONS TO THE RECOMMENDED RULING

As discussed by the Magistrate, upon dissolution a limited partnership undergoes "a three-step dismantling process: dissolution, winding up, and termination." Recommended Ruling at 43. The winding up period allows the partners to complete all transactions begun before dissolution but not completed by the dissolution date. Michael L. Closen *et al., Dissolution and Liquidation of Partnerships,* § 6.30 (Nov.1994). Also during this period, all of the assets are typically sold to accumulate a fund of cash. This fund of cash is then used to pay any debts to outside creditors, to return capital contributions made by partners, and to distribute to the limited and general partners the value of their respective interests in the partnership. *Id.; see also id.* § 6.35. The last step in the winding up process is to render an accounting of the partnership affairs.

The Magistrate concluded, and the parties agree, that the 1975 version of the Connecticut Uniform Limited Partnership Act ("ULPA") applies to the Cider Mill Farms Limited Partnership. Additionally, to the extent an issue is not covered by the limited partnership agreement or the ULPA, the Connecticut Uniform Partnership Act ("UPA") applies, to the extent that it is consistent with the ULPA. C.G.S.A. § 34-44(2) (rev. to 1975).

Because the Articles of Limited Partnership ("Articles") were silent on the issue of dissolution, the Magistrate applied C.G.S.A. § 34-31 (rev. to 1975) to determine the order of payments which should have been made after dissolution. The only substantive modification we make to the Recommended Ruling pertains to the interplay between subsections (1) and (2) of section 34-31 (rev. to 1975).

In its entirety, section 34-31 (rev. to 1975) provides:

**Priorities on dissolution.** (1) In settling accounts after dissolution, the liabilities of the partnership shall be entitled to payment in the following order: (a) Those to

creditors, in the order of priority as provided by law, except those to limited partners on account of their contributions, and to general partners, (b) Those to limited partners in respect to their share of the profits and other compensation by way of income on their contributions, (c) Those to limited partners in respect to the capital of their contributions, (d) Those to general partners other than for capital and profits, (e) Those to general partners in respect to profits, (f) Those to general partners in respect to capital. (2) Subject to any statement in the certificate or subsequent agreement, limited partners share in the partnership assets in respect to their claims for capital, and in respect to their claims for profits or for compensation by way of income on their contributions respectively, in proportion to the respective amounts of such claims.

Section 34–31 (rev. to 1975) creates confusion due to the use of the term "liabilities" in subsection (1), and the term "assets" in subsection (2). As one commentator observed, "the scheme of § 23 in the 1916 ULPA [C.G.S.A. § 34–31 (rev. to 1975) ] ... was a complicated and practically unworkable arrangement. That old law appeared to give preference to limited partners over general partners, but no one seems to know what was meant by it. No one ever accepted the challenge of explaining how § 23 of the 1916 ULPA should work." Closen, *supra*, § 6.43. After reviewing relevant caselaw, law review articles, and treatises, we agree that section 34–31 (rev. to 1975) is not a model of clear legislative drafting.

According to the Magistrate, "[s]ubsection (1) concerns the payment of liabilities; subsection (2) concerns the distribution of assets." Recommended Ruling at 51. We concur with the Magistrate's analysis on the order in which payments should be made after dissolution under subsection (1). *See id.* at 51–52. We disagree, however, on the purpose of subsection (2).

In this case, subsection (2) is relevant only as it provides a default rule on distributing assets and profits after dissolution in the event the parties have not addressed these issues in the limited partnership agreement.

The Magistrate concluded that subsection (2) set forth an additional step in the schedule of payments made after dissolution. According to this approach, once liabilities were paid out under subsection (1), assets would then be paid out under subsection (2).

■ We find instead that subsection (2) provides a default rule on how to calculate a limited partners' share of the assets and profits which are paid out under subsection (1). Indeed, subsection (1) begins with the phrase "in settling accounts after dissolution" which is a phrase not used in subsection (2). We read subsection (2) in two parts. The first part applies to distributions of assets. To the extent that there may be an in-kind distribution of assets, the limited partners will share in those assets "in respect to their claims for capital." The second part provides that limited partners will also receive profits or compensation for income on their contributions "in proportion to the respective amounts of such claims."

■ As the Magistrate noted, after dissolution a partner's interest is that of a creditor rather than an owner. Recommended Ruling at 49–50; *see Porter v. Barnhouse,* 354 N.W.2d 227, 233 (Iowa 1984); 2 Zolman Cavitch, *Business Organizations with Tax Planning* § 30.08[3][f] (1997). Any payments which must be made after dissolution to limited partners, in order to return their capital contributions and to distribute profits, are properly characterized as liabilities of the partnership. These liabilities would be paid out according to the schedule in section 34–31(1) (rev. to 1975). In this case, if the partnership's single asset was liquidated to make payments to creditors and partners pursuant to section 34–31(1) (rev. to 1975), there should have been no assets left for which section 34–31(2) (rev. to 1975) would have had any practical application. Indeed, the Magistrate made a similar observation. Recommended Ruling at 52 ("At this point, there should be no remaining money or assets to be distributed."). To give meaning to section 34–31(2) (rev. to 1975), we conclude that subsection (2) gives instruction on how to make payments under subsection (1). However, for reasons discussed by the Magistrate and also for reasons discussed below,

we find that the parties did agree on how to share profits, even though they did not provide for the order in which distributions should be made after dissolution. Thus, it is not necessary to apply the provision on sharing profits set forth in section 34–31(2) (rev. to 1975).

## II. THE LIMITED PARTNERS' OBJECTIONS

 One objection raised by the limited partners relates to how the Magistrate characterized the payments which should have been made by defendant George Arfaras to the limited partners after dissolution. The limited partners contend that instead of distributing "profits" after dissolution, the general partner should have distributed "assets." According to them, "the partnership assets are to be distributed according to the partners' claims for capital." Pl.'s Sur-reply Mem. dated 8/29/97, at 8; see Grillos' and Boubaris' Objection to the Recommended Ruling, dated 6/24/98, at 9. Their logic fails for two reasons. First, there is no dispute that it was proper to liquidate the ninety-acre parcel rather than to make an in-kind distribution of the land. Besides the fact that an in-kind distribution would not have been appropriate in the present situation,[1] there is no evidence that the limited partners wanted an in-kind distribution.[2] Thus, once the partnership's single asset was liquidated, the proceeds then should have been distributed in the form of cash (according to the schedule of priorities under section 34–31(1) (rev. to 1975)).

 Second, when a partnership acquires real estate, it becomes partnership property. It is not considered the property of the individual general or limited partners. See Reiter v. Greenberg, 21 N.Y.2d 388, 391, 235 N.E.2d 118, 120, 288 N.Y.S.2d 57, 60 (N.Y.Ct.App.1968) ("The individuals who contributed to the [limited] partnership acquired no title to the real property which was eventually acquired by the partnership."); see also In re Dutch Inn of Orlando, 2 B.R. 268, 272 (Bankr.M.D.Fla.1980). Thus, the limited partners have no interest in the real estate itself. See C.G.S.A. § 34–26 (rev. to 1975) ("A limited partner's interest in the partnership is personal property."). Instead, their interest in the partnership is their right to share in profits and surplus. Dutch Inn, 2 B.R. at 272; Reiter, 21 N.Y.2d at 391, 235 N.E.2d at 120, 288 N.Y.S.2d at 60.

 Another objection of the limited partners is that the pre-dissolution ratios on the payment of profits do not apply to the distribution of profits in the post-dissolution period. The Magistrate stated that the percentages set forth in paragraph 5 of the Articles should have applied. In paragraph 5, the parties agreed to share profits by giving the general partner Arfaras a 67.3% interest, with the remainder to the limited partners who each received either a 3.85% or a 1.92% interest. The limited partners contend that because the Articles are silent on dissolution, it is proper to apply the default rule from the second part of section 34–31(2) (rev. to 1975). According to their reasoning, the profits would be distributed proportionately according to the partners' capital contributions. Thus, defendant Arfaras would take nothing because he never made a capital contribution.

---

**1.** We recognize that there are some situations in which after paying the claims of outside creditors, the partnership may still have both real and personal property which could be distributed in kind rather than being sold and distributed in cash. See Closen, supra, § 6.38. According to one commentator, "a court of equity may decree the division of assets in kind in certain circumstances, such as when the value of property is readily ascertainable, where forced sale of property might result in prejudicial loss, or where one partner has an unfair advantage over another in bidding for property for sale." 1 Cavitch, supra, § 29.08. Here, however, the sole asset of the limited partnership was the ninety-acre parcel. As the parties did not agree to an in-kind distri-

bution of the ninety-acre parcel in the Articles, we do not find it that it would have been appropriate to order such a division.

**2.** While a partnership may liquidate its assets through an in-kind distribution, rather than distributing cash after a sale, limited partners cannot be compelled to accept an in-kind distribution. See Nicholes v. Hunt, 273 Or. 255, 541 P.2d 820 (1975); Houstoun v. Albury, 436 So.2d 224 (Fla.Dist.Ct.App.1983). Indeed, at least with respect to the return of a limited partner's capital contribution, the limited partner has no right to expect anything but a cash equivalent. C.G.S.A. § 34–24(3) (rev. to 1975).

One issue not addressed by the limited partners is that C.G.S.A. 34–31(2) (rev. to 1975) applies only to the sharing of profits among limited partners. It does not provide how the limited partners should share in relation to the general partner.

Instead, the limited partners contend that to calculate the exact amount of the payments, the interests of the general and limited partners should be determined as of the dissolution date, and that payments should be made based on these proportionate interests. As support for their conclusion that a partner's interest is computed as of the dissolution date, the limited partners rely on *Urzi v. Urzi*, 140 Cal.App.2d 589, 295 P.2d 539 (1956), *Essay v. Essay*, 180 Neb. 47, 141 N.W.2d 436 (1966), *Rosen Trust v. Rosen*, 53 A.D.2d 342, 386 N.Y.S.2d 491 (1976), and *Meuret v. Meuret*, 48 Or.App. 701, 617 P.2d 918 (1980). All of these cases involve the issue of distributing profits to *former* partners when the partnership continued after dissolution in the partners' absence. None of these cases addresses the factual situation presented in this case—how to distribute a *current* partner's share of profits, when the partnership dissolved because its term expired and not because a partner withdrew, died, or because a receiver was appointed to manage the partnership's affairs.

The relevant portion of *Rosen* involved the payment of a deceased partner's share of post-dissolution profits. Pursuant to the partnership agreement's terms, if one partner died, the surviving partners were required to either purchase the deceased partner's interest or liquidate the business and distribute the assets. The decedent's estate brought suit after the surviving partners did neither. In other proceedings in the case, the court found that the dissolution date was the last day of the year in which the decedent died. Despite the technical dissolution, the court found that the partnership had not undergone the process of liquidation because it continued to operate as an ongoing business for at least an additional seven years. 53 A.D.2d at 350–51, 386 N.Y.S.2d at 498.

The issue was whether to assign the decedent a one-third interest based on provisions in the partnership agreement stating that the

three partners would share profits equally. The court decided not to apply these pre-dissolution provisions. Instead, the court relied on section 73 of the New York Partnership Law which pertains to the continuation of the partnership after the death or retirement of one of the partners. Section 73, which resembles C.G.S.A. § 34–80 (rev. to 1975), provides that a former partner is entitled to have the value of his interest ascertained as of the dissolution date. The court held:

> it is clear from a reading of the entire agreement that these provisions do not specifically apply to post-dissolution distribution. In the absence of such specific application, the pre-dissolution percentage shares do not serve to supersede the statutory share of section 73 of the Partnership Law.

*Id.* at 358–59, 386 N.Y.S.2d at 503.

Based on these facts, we do not find that *Rosen* stands for the general proposition that any profit-sharing provisions in a partnership agreement cease to apply after dissolution if the partnership agreement lacks a clause on dissolution, such that a court should apply the default profit-sharing rules of the ULPA. Rather, the *Rosen* decision should be read in the context of the specific factual situation before that court. The *Rosen* court decided not to apply the profit-sharing provisions of the partnership agreement because those provisions did not precisely cover how to share profits upon a partner's death when the partnership continues in the partner's absence. Without a specific partnership provision on point, the court applied the default rules of the UPA.

Similarly, we find the other cases relied on by the limited partners inapplicable. *Essay* found that a former partner was not entitled to share in post-dissolution profits because as of the dissolution date, the partnership was insolvent, the defendant's capital account had a negative balance, and the defendant had improperly converted partnership funds for his own use. 180 Neb. at 49, 141 N.W.2d at 438. Thus, the court held that as of the dissolution date the defendant "had no interest in the partnership assets and therefore

no interest in the profits earned after dissolution." *Id.* at 60, 141 N.W.2d at 444.

*Urzi* also involved a former partner who sought to share in post-dissolution profits. The court found that the plaintiff-former partner had no right to share in post-dissolution profits because he had no interest in the partnership assets as of the dissolution date. The court based its decision on the statutory provision of the California UPA which is the same as section 73 of the New York Partnership Law at issue in *Rosen.*

Finally, in *Meuret,* there was evidence that the defendant-son had withdrawn from the father-son partnership and did not participate in the winding up process. Also, shortly after the dissolution date, the son was incarcerated for an unrelated crime. Relying on section 68.640 of the Oregon statutes (similar to the statutes at issue in *Rosen* and *Urzi* ), the son sought profits which were earned during the dissolution period and attributable to the use of his capital. Without discussion, the court found that it was proper to deny profits to the defendant. *Meuret,* 48 Or.App. at 705, 617 P.2d at 920–21. However, it was found that the son breached his fiduciary duty by misappropriating partnership funds for his personal use.

 All of these cases are factually distinguishable from the present dispute because they all involve the payment of profits to former partners. Also, with the exception of *Meuret,* the cases all involve the interpretation of a statute similar to C.G.S.A. § 34–80 (rev. to 1975). Under this provision, when the business continues in a former partner's absence, the former partner is generally entitled to share profits in proportion to his interest in the partnership despite any pre-dissolution profit-sharing provisions in the partnership agreement. *See Timmermann v. Timmermann,* 272 Or. 613, 629, 538 P.2d 1254, 1262 (Or.Sup.Ct.1975). The rationale is that the former partner's capital was used to generate profits in the post-dissolution period. These concerns are not present here.

In this case, Cider Mill Farms was continued after the dissolution date for the sole purpose of winding up the limited partnership's affairs. Cider Mill Farms entered into a contract for the sale of the ninety-acre parcel on April 15, 1987, which was before the dissolution date of July 19, 1987. The closing occurred on September 2, 1987 during the liquidation period. Because this item of business was begun before the dissolution date, it is appropriate to apply the Articles' profit-sharing provision which was in effect when the contract for the sale of land was entered into. *See* 59A Am.Jur.2d Partnership § 1034 ("A partner has been held entitled to his proportionate share of the net profits realized on the completion of projects which were commenced or planned prior to the dissolution of partnership.").

Moreover, the UPA provides that if a partnership continues after the end of the partnership's fixed term, the partnership is considered to be "at will," and all the terms of the previous partnership agreement continue to apply (only the fixed-term provision is disregarded). C.G.S.A. § 34–61(1) (rev. to 1975); [3] *see* Closen, *supra,* § 6.8.

In this case, while the parties did not specify the order in which payments would be made upon dissolution, they did provide for how profits would be shared. There are no circumstances in the present case that would justify departing from what the parties agreed to when they formed Cider Mill Farms. Of their own volition, the limited partners agreed to share in profits according to paragraph 5 of the Articles. Some limited partners now want to ignore their contractual rights and obligations because the default provisions of the ULPA would give them a larger slice of the pie.

Consequently, we find that the Magistrate properly relied on section 34–31 to govern the schedule of payments which should have been made after dissolution. We also agree with the Magistrate that paragraph 5 of the Articles governs the sharing of profits among the general and limited partners after disso-

---

3. Section 34–61(1) (rev. to 1975) provides:
 When a partnership for a fixed term ... is continued after the termination of such term ... without any express agreement, the rights

and duties of the partners *remain the same* as they were at such termination, so far as is consistent with a partnership at will.
(emphasis added).

lution. With respect to the return of capital contributions, the limited partners will receive a dollar for dollar return of their capital contributions (to the extent that sufficient funds are available after paying creditors' claims and profits to limited partners).

Pappas rebuked the Magistrate for his interpretation of section 34–31 (rev. to 1975), and we are certain he will cast similar criticism in our direction. According to Pappas, the Magistrate "contrived his own interpretation which doesn't exist anywhere in the literature on partnership law." Pl.'s Fifth Mem. of Law dated 7/2/98, at 13. However, there is no Connecticut supreme court case providing guidance on the statutory construction of section 34–31. Without any binding precedent, it is the province of this Court to say what the law is. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803).

## CONCLUSION

For the foregoing reasons, this Court adopts, approves, and ratifies Magistrate Judge Garfinkel's Recommended Ruling **(document # 257)** as modified herein. We also DENY the objections to the Recommended Ruling made by plaintiff **(document # 258)** and defendants/cross-claimants Grillos and Boubaris **(document # 259)** on count thirteen. Lastly, we DENY plaintiff's objections as to count seven (fraud claim) against Irene Arfaras for the reasons set forth by the Magistrate.

**SO ORDERED.**