RINKE *v.* RINKE.

1. PARTNERSHIP—DISSOLUTION—PARTIES—CONSPIRACY—EVIDENCE.

Denial of defendants' motion for leave to join a corporate auto-mobile manufacturer as party defendant to cross bill in suit for dissolution of partnership between 3 brothers, 2 of whom had conducted an automobile sales agency for the proposed additional cross-defendant, but without prejudice to right of defendants to institute an action for damages for conspiracy and fraud was not error, where representatives of the cor-poration were produced as witnesses by defendants and a proper basis for a claim of conspiracy was not established.

2. SAME—DISSOLUTION—TERM OF EXISTENCE.

Dissolution of a partnership without definite term or specified particular undertaking may be·effected by a partner at any time without breaching the agreement (CL 1948, § 449.31).

3. FRAUD—BURDEN OF PROOF.

The party alleging fraud has the burden of establishing it by clear and satisfactory proof.

4. PARTNERSHIP—DISSOLUTION—FRAUD—BURDEN OF PROOF—EVI-DENCE.

Defendant partner *held,* to have failed to sustain his burden of proof of fraud alleged incident to dissolution of partnership by plaintiff partners, where it appears he was advised from time to time with reference to the situation and recognized plaintiffs' right to terminate partnership.

---

REFERENCES FOR POINTS IN HEADNOTES

[2] 40 Am Jur, Partnership, §§ 19, 236.
[3] 24 Am Jur, Fraud and Deceit, § 255.
[5] 3 Am Jur, Appeal and Error, § 815; 40 Am Jur, Partnership, § 237.
[7] 40 Am Jur, Partnership, § 270.
[9] 2 Am Jur. Appeal and Error, § 3; 3 Am Jur, Appeal and Error, §§ 814,·815.
[10] 40 Am Jur, Partnership, § 265.·
[10] Partner's lien on or interest in assets of partnership as af-fected by dissolution agreement.·43 ALR 95.

5. APPEAL AND ERROR—PARTNERSHIP—DISSOLUTION—DE NOVO RE-
VIEW.
   An appeal from decree dissolving a partnership is heard by the
   Supreme Court de novo.

6. PARTNERSHIP—DISSOLUTION—DATE—SUBSEQUENT INDIVIDUAL EN-
TERPRISES OF PARTNERS—ACCOUNTING—PROFITS.
   Dissolution of partnership, engaged in the hardware business as
   one enterprise and in the sales and servicing of automobiles
   as another enterprise, as of date when contract with manufac-
   turer of automobiles terminated and was renewed with plain-
   tiff partners individually and defendant partner continued
   the hardware business held, proper, where the automobile busi-
   ness was thereafter conducted by plaintiffs individually and
   the hardware business left under control of defendant and no
   subsequent profits were accounted for to other former part-
   ners as to either enterprise, notwithstanding statutory provision
   as to continuance of the business until the winding up of the
   partnership affairs (CL 1948, § 449.30).

7. SAME—DISSOLUTION—SUBSEQUENT    INDIVIDUAL    ENTERPRISES—
GOOD WILL.
   Accounting as to good will of enterprises engaged in by former
   partners individually after dissolution of partnership need
   not be rendered, where the partnership had no interest in
   franchises which constituted the basic element of such good
   will and such good will, pertaining to businesses of plaintiffs,
   established after the dissolution, could not exist separate and
   apart from the business.

8. SAME—DISSOLUTION—SUBSEQUENT INDIVIDUAL USE OF PARTNER-
SHIP ASSETS.
   The value of the use of partnership assets in the conduct of in-
   dividual enterprises by plaintiff partners after dissolution of
   the partnership need not be charged to the plaintiffs in the
   accounting, where there is no proof as to such value, plain-
   tiffs claim there was a mutual general understanding in the
   matter, and defendant partner made no showing as to value
   of the assets used by him in carrying on the enterprise he
   retained from the partnership.

9. APPEAL AND ERROR—SUPREME COURT CONFINED TO THE RECORD.
   Supreme Court, in the consideration of a case on appeal, is con-
   fined to the record.

10. PARTNERSHIP—DISSOLUTION—DIVISION OF ASSETS—DEBTS.
    Division of assets of partnership instead of sale and distribution
    of cash proceeds was proper, incident to dissolution of partner-

ship, where there were no debts to be paid from the proceeds, and division made is not disturbed where there is no showing of prejudice thereby to appellants (CL 1948, § 449.38).

11. SAME—DISSOLUTION—APPRAISAL OF REAL ESTATE.

Acceptance by trial court of appraisal of various parcels of real estate by one of plaintiffs' witnesses in partnership dissolution proceedings was proper, notwithstanding higher values were placed upon some parcels by other witnesses, where it was desirable, because of the fact that the assets were being distributed rather than sold, that the appraisal be on a uniform basis, the object being to provide a fair distribution of the assets.

12. SAME—DISSOLUTION—CONVEYANCES—PREJUDICE.

Claim that appellants were prejudiced by conveyance of property by partners to one of the partners *held*, without merit in subsequent dissolution proceedings, where the value of the property conveyed was charged to the transferee.

13. SAME—DISSOLUTION—DAMAGES—UNSUPPORTED CLAIM OF VIOLATION OF STATUTES.

Claim for damages because of alleged violations of the Federal anti-trust laws was properly rejected in partnership dissolution proceedings, where such claimed violations were wholly unsupported by proofs (15 USCA, § 1 *et seq.*).

14. APPEAL AND ERROR—EQUITY—REVERSAL OF DECREES.

Generally the Supreme Court does not reverse a chancery decree made by a trial court after a full hearing on the facts unless convinced that such decree is unfair and inequitable and not in accordance with the just rights of the parties.

Appeal from Macomb; Spier (James E.), J. Submitted April 5, 1951. (Docket No. 25, Calendar No. 44,992.) Decided June 4, 1951. Rehearing denied September 5, 1951.

Bill by Norbert Rinke and others against George Rinke and wife for accounting of partnership assets. Cross bill by defendants against plaintiffs for injunction and money damages. Decree for plaintiffs. Defendants appeal. Affirmed.

*Bert V. Nunneley* (*Nunneley & Nunneley,* of counsel), for plaintiffs.

*George A. Francis* (*Meyer Weisenfeld,* of counsel), for defendants.

CARR, J. Plaintiffs brought suit in circuit court alleging the dissolution of 2 partnerships known as Rinke Brothers and Rinke Motors, and seeking an accounting and the distribution of assets. Defendants in their answer, cross bill and amended cross bill, sought like relief, together with incidental equitable remedies, and damages to which they claimed they were entitled. The issues raised by the pleadings and the proofs were largely factual and were determined by the trial court in plaintiffs' favor. A decree was entered declaring the rights of the parties to the litigation and providing for the distribution of the assets. Defendants and cross-plaintiffs have appealed.

In 1915, or perhaps prior thereto, the father of the plaintiffs Edgar and Norbert Rinke, and of the defendant George Rinke, established a general hardware and appliance business in Center Line, Macomb county. Later the sons successively entered the business, and apparently through the efforts of all concerned it was successful. Prior to the death of the father the business of selling automobiles was added, resulting in an enlargement of activities. Eventually, after the father's death, the 3 sons became owners of the business, and for its more efficient conducting formed 2 partnerships. The hardware and appliance business was operated under the name of Rinke Brothers, with the defendant and cross-plaintiff George Rinke in active management and immediate control. The other partnership, Rinke Motors, was conducted by the plaintiffs Edgar and Norbert Rinke, and was engaged in the selling

of automobiles and parts and the operation of a garage for the servicing of cars. Both ventures were successful financially although the greater part of the income accruing to the partners came from the operations of Rinke Motors.

For some years prior to November 1, 1948, Rinke Motors held from General Motors Corporation franchise agreements for the sale of Cadillac, Buick, Oldsmobile, Pontiac and Chevrolet cars. These franchises, it appears, were obtained largely through the efforts of Edgar Rinke. From time to time the different divisions of General Motors granting the franchises expressed some dissatisfaction with reference to the selling agency handling all the types of cars named. The desire was expressed that each make of car should be handled separately from the others. In October, 1947, at the time of the making of new agreements covering the year from November 1, 1947, to and including October 31, 1948, the representatives of the Oldsmobile division informed the partners that it would not, following the expiration of such franchise, enter into a new agreement for the sale of its cars by the partnership. In the early part of 1948 the other divisions of General Motors concerned indicated that they would insist on separate agencies. Negotiations were had by correspondence and by personal interviews in an attempt to reach agreements. In these negotiations Edgar Rinke represented himself and his brothers. We think it a fair conclusion from the testimony in the record that he endeavored to persuade the representatives of General Motors to continue the granting of franchises to the partnership for the sale of Cadillac, Buick, Pontiac and Chevrolet cars. Such efforts were not successful, but it was finally agreed that franchises for the sale of Buick and Chevrolet automobiles would be issued to Edgar Rinke for the year beginning November 1, 1948, and

like franchises to. Norbert Rinke covering the sale of Cadillac and Pontiac cars for the same period.

It was the claim of the plaintiffs on the trial that the defendant George Rinke was fully advised with reference to the negotiations that were being carried on, the position of the different divisions of General Motors, and the final determination on behalf of the company as to what it would be willing to do. Plaintiffs advised defendant that they wished to dissolve the 2 partnerships and to engage in business individually. It does not appear that defendant expressed any interest in obtaining a franchise authorizing him to sell automobiles, or that he was opposed to his brothers doing so.

The making of new arrangements necessitated by the change required that Edgar Rinke obtain a proper site on which to erect a building for the conduct of his automobile agency. Some years previously the partners had acquired, as a partnership asset in the nature of an investment, certain property referred to in the record as the "Netts property." Title was taken in the names of the 3 partners rather than in the name of either of the partnerships. Edgar requested that his brothers, their wives joining in the conveyance, execute a deed to him of their respective interests in order that he might begin necessary construction work. This was done. At the time, and by subsequent statements, George Rinke indicated that he did not wish to harm his brother or interfere with his plans. That defendant understood the situation fully seems apparent from the record. Because of the condition of his health at the time of the trial, as it is claimed, he did not testify, but his wife, the defendant and cross-plaintiff Edna Rinke, did so, stating that she did not wish to sign the deed but that her husband insisted that she should do so.

Notices of the dissolution of the 2 partnerships as of October 31, 1948, were filed on the 8th of November following. After the dissolution it does not appear that business was transacted on behalf of Rinke Motors other than the sale of certain automobiles on hand on October 31, 1948, the profits from which sales were divided equally among the partners by the decree of the trial court. The new franchise agreements for the sale by Edgar Rinke of Buick and Chevrolet automobiles and by Norbert Rinke of Cadillac and Pontiac cars were duly executed, and each proceeded to carry on his business individually. The hardware and appliance store was left under the management and control of the defendant, and an attempt was made by plaintiffs to reach an agreement with defendant for the settlement of accounts and distribution of assets of both partnerships, but without success.

Negotiations having failed, plaintiffs on December 10, 1948, filed their bill of complaint in the instant case, reciting the dissolution of the partnerships pursuant to notice on the 31st of October preceding and asking that the court enter a decree fixing the rights of the parties concerned and providing for the partitioning and distribution of assets. The bill also listed various parcels of real estate claimed to be partnership assets but the titles to which were in the names of the 3 brothers. Because of this situation Edna Rinke, wife of defendant George Rinke, was joined as a party defendant, and for a like reason the wife of Norbert Rinke and the wife of Edgar Rinke were also made parties. Except as otherwise indicated, Edgar and Norbert Rinke are herein referred to as the plaintiffs and George Rinke as the defendant.

In their pleadings defendants charged the plaintiffs with failure to deal fairly with George Rinke, particularly with reference to the franchises for the

sale of General Motors cars. The amended cross bill, filed January 18, 1949, alleged that plaintiffs informed defendant that General Motors Corporation would not permit the latter to continue in the automobile sales and service business in the partnership known as Rinke Motors, that plaintiffs had conspired together to divest defendant of all his partnership rights in the future earnings of the partnership business or in any other business that might grow out of it, and that plaintiffs had also conspired with General Motors Corporation to accomplish such result. It was alleged that the conveyance to Edgar Rinke of the "Netts property" was procured through fraud, misrepresentation and coercion. Injunctive relief against the erection of buildings thereon was sought. It was also claimed that George Rinke had suffered greatly in his health because of the treatment accorded him by the plaintiffs, and that as a result the defendant and cross-plaintiff Edna Rinke had sustained injury for which she claimed the right to damages. Subsequently, on motion, this claim was stricken from the cross bill. It was further alleged that the acts of the plaintiffs were in violation of the anti-trust laws of the United States. The court was asked to decree that the new franchises granted by General Motors Corporation to the 2 plaintiffs individually, effective November 1, 1948, were the property and assets of the partnership business conducted by Rinke Motors and held in trust by the plaintiffs for the benefit of the 3 partners. A further detailed statement of the specific charges and claims made in defendants' pleadings is unnecessary.

Shortly after the bringing of the suit defendants moved for leave to join the General Motors Corporation as a party defendant to the cross bill, on the theory that said corporation through its officers and agents had conspired with the plaintiffs to in-

jure and defraud defendants. The right to damages on such ground was asserted. The motion was denied but without prejudice to the right of defendants, or either of them, to institute an action for damages on the basis alleged. It is now claimed that such denial was erroneous and prejudicial to appellants. In the brief of counsel for defendants it is suggested that it was desired to cross-examine officials and representatives of the General Motors Corporation, the statement being made that "appellants had no means of proving their case except by cross-examination." Without reference to the merits of the claim that the motion should have been granted for the reason suggested, it may be noted that representatives of the 4 divisions of General Motors Corporation concerned in the granting of franchises to the plaintiffs for the year beginning November 1, 1948, were produced as witnesses by defendants and cross-plaintiffs and were examined at some length in open court. The record does not indicate that the right of examination was limited, nor does the testimony of any of the witnesses furnish any proper basis for a claim of conspiracy. It may not be assumed that the witnesses would have testified more favorably to defendants and cross-plaintiffs had they been subject to cross-examination by counsel for the latter. The motion was properly denied. Appellants were not entitled to join General Motors Corporation as a party to the suit.

No claim is made that the partnerships created by the parties were to continue for any definite period of time. Neither does it appear that there was any feature involved in the agreement with reference to the business of either partnership implying a definite minimum term. Under the circumstances the plaintiffs had the right to dissolve the partnerships. Such result follows from the specific terms of sec-

tion 31 (1) (b) of the uniform partnership act[*] which declares that dissolution is caused, without violation of the agreement between the parties, "By the express will of any partner when no definite term or particular undertaking is specified." *Dolenga* v. *Lipka,* 224 Mich 276, 283; *Cole* v. *Cole,* 289 Mich 202, 204; *Atha* v. *Atha,* 303 Mich 611, 614; 68 CJS, p 843.

Defendants and cross-plaintiffs having alleged fraud on the part of the plaintiffs, the burden rested on them of establishing such by clear and satisfactory proof. This they failed to do. The trial court, after listening to the testimony offered in the case, came to the conclusion that there was no fraud. While this Court hears the matter *de novo* on appeal, we think that the conclusion was fully justified. We find no evidence fairly supporting the claim that George Rinke was deceived by the plaintiffs. On the contrary, the proofs establish clearly that he was advised from time to time with reference to the situation and that he recognized the right of the plaintiffs to terminate the partnerships.

It is quite probable that the prior information that the representatives of General Motors Corporation had acquired concerning the abilities of the plaintiffs in the sale and servicing of automobiles influenced the decision to grant them franchises for the year beginning November 1, 1948. Such circumstance does not, however, indicate fraud. Plaintiffs obviously came to the conclusion that because of the position taken by General Motors Corporation it was not feasible to attempt to continue the business of the partnership, Rinke Motors. They were not precluded from engaging in business individually nor were they bound to reject advantageous business connections with the different divisions of

[*] PA 1917, No 72, pt 6, § 31(1)(b) (CL 1948, § 449.31 [Stat Ann § 20.31]).

General Motors Corporation. Obviously said corporation considered that it was contracting with the plaintiffs individually, as it had the right to do. Defendants and cross-plaintiffs' theory, if tenable, would lead to the conclusion that the franchises for the sale of cars were actually granted to the partnership which had been dissolved, and that the former partners were entitled to benefit accordingly. The record before us does not justify such a conclusion.

It is urged that the trial court was in error in decreeing that the partnership was dissolved as of October 31, 1948, and in determining the rights of the partners as of that date. It is in effect the claim of the appellants that the partnership business was continued by the plaintiffs. They direct attention to the provisions of CL 1948, § 449.30 (Stat Ann § 20.30), which reads as follows:

"On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed."

The obvious fact is that in the instant case the partnership business was not continued after the dissolution of the partnerships, with the possible exception of the hardware and appliance store. Evidently defendant George Rinke continued to operate the business of Rinke Brothers under a tacit arrangement that he should do so. He made no accounting as to the profits of such business nor did the plaintiffs insist on his doing so. It is a fair inference that they regarded the hardware and appliance business as belonging to defendant, and they sought no interest in it other than that the value of the property as of October 31, 1948, be taken into account in the distribution of assets. The partnership known as Rinke Motors did not continue in the business of selling and servicing automobiles. It had no franchise with the different divisions of

General Motors Corporation under which it might do so. As before noted, a few cars were on hand at the time of the dissolution and these were subsequently sold. No complaint is made with reference to the provisions of the decree giving equal rights to the former partners in the profits that were thus realized.

Counsel for appellants cite and rely on *Vanderplow* v. *Fredricks,* 321 Mich 483. There a partnership was formed to continue so long as the members should mutually agree. It was composed of 1 general partner and 2 limited partners who took no part in carrying on the business other than in an advisory capacity. Differences of opinion having arisen between the partners, the plaintiff, who was the general partner, served written notice of dissolution upon the defendants. They, however, refused to accept the amounts offered by plaintiff and, in consequence, the latter brought suit for an accounting and determination of the respective rights of the parties. From and after the date of dissolution as set forth in the notice plaintiff continued to operate the business as sole proprietor, using the partnership assets. It was held that defendants were entitled to share in the profits up to the time of the final accounting. In the case at bar the business of the partnership known as Rinke Motors, as above pointed out, was not continued. The factual situation is materially different than in the *Vanderplow Case.* The statutory provisions cited by appellants may not be construed as requiring plaintiffs to share with defendant the profits of their individual businesses.

Appellants also urge that the trial court should have required plaintiffs to render an accounting for defendant's benefit, based on the value of good will attached to the franchises granted to the plaintiffs by the General Motors Corporation for the year

beginning November 1, 1948, and possibly subsequent franchises. As before pointed out, the partnership had no interest in such franchises and was not entitled to the benefit of any good will attached thereto. The partnership known as Rinke Motors had been dissolved by act of the parties. Conceivably its business might have been carried on until a definite and final winding up, but such was not the case here. Not having the requisite franchises it could not continue the business of selling automobiles for the General Motors Corporation. It could not, in other words, continue the business in which it had previously engaged, and good will that had been created could not exist separate and apart from such business. The situation is somewhat comparable to that presented in *Grand Rapids Trust Co.* v. *Haney School Furniture Co.,* 221 Mich 487, 492 (27 ALR 1020). Defendant is not entitled to benefit by reason of good will pertaining to the businesses of the plaintiffs, established after the dissolution of the partnerships.

Appellants claim further that plaintiffs should have been charged in the accounting with the value of the use of assets belonging to the partnership, which they used in their individual businesses. No testimony was offered identifying the specific assets so used, or tending to show the value of such use. It is significant in this regard that defendant made no showing as to the value of partnership assets used by him in carrying on the hardware and appliance business. It is the claim of the plaintiffs, in substance, that there was a general understanding as to what should be done following the dissolution of the partnerships, and that the arrangement was of a mutual character. Be that as it may, we think the failure on the part of cross-plaintiffs to offer evidence as to the value of the assets used by plaintiffs, or either of them, precludes them from now

contending that the decree from which they have appealed should be set aside on this ground. The trial court determined the issues before him on the basis of the proofs of the parties. This Court is necessarily governed by the record before us. *Stephenson* v. *Golden,* 279 Mich 710.

The decree of the trial court provided for dividing the assets of the partnerships rather than for the sale thereof and the distribution of cash proceeds. Appellants insist that such method of procedure is erroneous and not contemplated by the uniform partnership act. Attention is directed to section 38 of said act (CL 1948, § 449.38 [Stat Ann § 20.38]). Construing together pertinent provisions of the statute leads to the conclusion that it was not the intention of the legislature in the enactment of the uniform partnership act to impose a mandatory requirement that, under all circumstances, the assets of a dissolved partnership shall be sold and the money received therefor divided among those entitled to it, particularly so, as in the case at bar, where there are no debts to be paid from the proceeds. The situation disclosed by the record in the present case is somewhat unusual in that no one other than the former partners is interested in the assets of the businesses. In view of this situation and of the nature of the assets, we think that the trial court was correct in apportioning them to the parties. There is no showing that appellants have been prejudiced thereby.

A number of witnesses, realtors familiar with the value of property in the community, were produced by the parties on the trial and testified as to the fair market value of the different parcels of real estate owned by the 2 partnerships. The trial judge accepted the appraisals of one of plaintiffs' witnesses who was a licensed real estate broker with many years of experience in the appraising of prop-

erty. Appellants call attention to the fact that other witnesses placed higher values on some of the property involved. However it was not incumbent on the trial judge to accept the higher appraisals in lieu of those of the witness referred to if the correctness of the latter was established to the satisfaction of the court. As pointed out by the latter in the opinion filed, the values were determined for purposes of distribution, and in consequence appraisals on a definite uniform basis were desirable. The object sought was a fair distribution of the assets, and it is apparent that the trial judge went into the matter very carefully with the thought in mind of giving to each of the parties concerned his fair portion of the assets, and in such form as to be best adapted for use by the recipient.

In their cross bill appellants asked that the conveyance by defendants to Edgar Rinke of the so-called "Netts property" be set aside on the ground that it was obtained by fraud and misrepresentation. The trial court determined the issue in favor of the plaintiffs and under the record was fully justified in doing so. The uncontradicted testimony indicates that George Rinke was fully advised with reference to the matter, that he knew the purpose for which his brother wished to become sole owner of the property, and that he was willing at that time to cooperate, at least to the extent of conveying his interest. In decreeing the mutual rights and obligations of the former partners the value of the property in question was determined and charged to Edgar Rinke. There is no merit in appellants' claim that they were prejudiced by the action of the trial court in this respect.

It may also be noted that the claims made by defendants and cross-plaintiffs in their pleadings with reference to violations by plaintiffs of the Fed-

eral anti-trust laws * are wholly unsupported by proof. The claim for damages because of such violations was properly rejected. Other questions suggested by the record, and referred to by counsel in their briefs, are incidental to the matters above considered and do not require specific discussion. A consideration of the entire record leads to the conclusion that appellants were, by the decree of the trial court, given everything to which they were entitled. As a general rule this Court does not reverse a chancery decree made by a trial court after a full hearing on the facts unless convinced that such decree is unfair and inequitable and not in accordance with the just rights of the parties. *Langdell* v. *Langdell,* 285 Mich 268. In the instant case we are not so persuaded.

The decree of the trial court is affirmed, with costs to appellees.

Reid, C. J., and Boyles, North, Dethmers, Butzel, Bushnell, and Sharpe, JJ., concurred.

* See 15 USCA, § 1 *et seq.*—Reporter.