Carl DISOTELL, Appellant,

v.

Earl STILTNER, Appellee.

No. S–10984.

Supreme Court of Alaska.

Nov. 5, 2004.

Ronald L. Bliss, Bliss, Wilkens & Clayton, Anchorage, for Appellant.

Kevin G. Brady, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Two partners formed a partnership in 1997 for the purpose of converting an existing building into a hotel. One, Earl Stiltner, contributed the parcel of land bearing the building that was to be converted. The partnership was dissolved in 1998 after the partners reached an impasse. We consider here whether the superior court, in winding up the partnership, should have liquidated the partnership, rather than permitting Stiltner to buy out Carl Disotell, the other partner. We affirm as to the buyout, but remand because there was no evidence of the objective value of buyout property. We also remand for correction of other minor errors.

## II. FACTS AND PROCEEDINGS

Carl Disotell is an Eagle River resident who develops properties as a general contractor.[1] His construction company is Disotell Construction. Earl Stiltner is also an Eagle River resident. Stiltner owned and operated a real estate office and property management company in Eagle River from May 1990 until December 1997. In 1994 he and his wife purchased Lots 10 and 11 of Block 12 of the Revised Plat of the Walter G. Pippel Addition No. 2 (the "hotel property") for $275,000. There was a two-story commercial building on the property. Stiltner's wife later quitclaimed her interest in the property to him.

Disotell and Stiltner met in 1997. They discussed Stiltner's property and agreed to form an equal partnership to develop, construct, and operate a hotel on the property. They never entered into a written partnership agreement. They intended to convert the two-story commercial building on the property into a hotel that would open for business by May 15, 1998. Disotell Construction was to serve as general contractor; it was to provide its services on a cost-only basis. Disotell was to use his experience as a developer to plan the project and obtain the necessary permits and licenses.

The parties agreed that Disotell would purchase a one-half interest in the hotel property for $137,500, one-half of Stiltner's cost. They also agreed that the funds from which Disotell would buy the one-half interest would come only from the profits of the hotel. After Stiltner had recovered his original cost basis in the property and certain other costs, he and Disotell were to share profits on a fifty/fifty basis. The parties dispute what those other costs included. Disotell argues that they included the costs of art and equipment owned by Stiltner that they had planned to use in the hotel and the cash required to develop and construct the hotel. Stiltner asserts that they only included the former.

---

1. Nearly all relevant facts were stipulated to by the parties.

Stiltner quitclaimed one-half of his interest in the hotel property to Disotell on March 3, 1998. The parties disputed who was obligated to put up the cash for the project. Disotell later testified that Stiltner was to have provided all of the cash; Stiltner claimed they were to contribute equally to the expenses. The superior court later found that the partners jointly would provide for the project's cash needs. The parties agreed that neither would charge interest for the purchase of the hotel property or for cash expenses.

After learning that it could acquire a liquor license free of charge for a hotel of fifty or more rooms, the partnership agreed to convert the two-story building into a four-story hotel, bar, and restaurant. The partnership hired an architect, structural engineer, and a civil engineering firm. Disotell testified that he contributed hundreds of hours to developing the project.

In 1998 the partnership decided to purchase a parking lot for the hotel. Although the lot was purchased in Disotell's name, Stiltner provided the earnest money and down payment, totaling $50,000. He also paid the mortgage for May through October 1998 and made one property tax payment. Disotell paid the mortgage from November 1998 through July 2001 and made several tax payments.

In May 1998 Disotell advised Stiltner that the property required a sewer line. Construction on the property had not yet begun. Stiltner disagreed that a sewer line was necessary; he thought there would be no increase in sewage from the property, because Disotell had not yet commenced construction. He denied Disotell the building access needed to assess the mechanical, electrical, and other systems. He also refused to remove his personal property from the building. The superior court later found that "a complete breakdown in the relationship between Stiltner and Disotell" occurred in May 1998,

after which Stiltner refused to continue the project.

The partnership never produced a profit. Stiltner has exclusively possessed the hotel property since May 15, 1998. He testified that he occupies the premises as his residence and has stored his personal possessions there.

Disotell filed suit in the superior court, seeking dissolution of the partnership, judicially supervised windup of partnership affairs, appointment of a receiver, and damages. Stiltner answered and later counterclaimed. He sought rescission of the partnership agreement. Following a two-day bench trial, the court entered findings of fact and conclusions of law on December 11, 2001. Disotell unsuccessfully moved to amend the conclusions of law. On May 28, 2002 he moved to introduce evidence of partnership asset and liability values. The court denied this motion. It entered final judgment on February 7, 2003. Disotell appeals.

## III. DISCUSSION

### A. Standard of Review

■ Interpretation of the Alaska Uniform Partnership Act [2] (the Act) presents a question of law to which we apply our "independent judgment." [3] We review the superior court's factual findings for clear error.[4]

### B. It Was Not Error To Give Stiltner a Buyout Opportunity.

■ Disotell argues that the superior court failed to follow the Act when the court gave Stiltner the option to purchase Disotell's partnership interest for $73,213.50, the value of Disotell's interest as calculated by the court. The superior court proposed two alternative methods for winding up the partnership. The first alternative allowed Stiltner to purchase Disotell's partnership interest. The court reasoned that this would avoid the unnecessary cost of appointing a

---

2. AS 32.05.040–.995. References to the Act are to AS 32.05.040–.995. Although the Act was repealed in 2000, effective January 1, 2004, and replaced by AS 32.06.201–.997, it applies to the Disotell–Stiltner partnership, which was formed in 1997. Ch. 115, §§ 7, 8, 10, SLA 2000.

3. *Pieper v. Musarra*, 956 P.2d 444, 446 (Alaska 1998).

4. Alaska R. Civ. P. 52(a).

receiver and would reduce economic waste. The second alternative was available if Stiltner had insufficient funds to pay Disotell; the court would then "appoint a receiver to take possession of and to sell the partnership property, to pay the costs of the receiver, and distribute the remaining proceeds according to [its] findings of fact and conclusions of law."

Disotell claims that the Uniform Partnership Act made liquidation a matter of right. He argues that any partner who has not wrongfully caused dissolution of the partnership may demand liquidation. He asserts that the superior court erred when it concluded that "liquidation is not mandatory." He therefore seeks a remand with instructions for appointment of a receiver to take possession of the assets and liquidate them.

Alaska Statute 32.05.320 provided that "[u]nless otherwise agreed the partners who have not wrongfully dissolved the partnership ... may wind up the partnership affairs...." Alaska Statute 32.05.330 provided in part:

(a) When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against the copartners and all persons claiming through them in respect of their interest in the partnership, unless otherwise agreed, may have the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners....

(b) When dissolution is caused in contravention of the partnership agreement the rights of the partners are as follows: (1) each partner who has not caused dissolution wrongfully has (A) all the rights specified in (a) of this section, and (B) the right, as against each partner who has caused the dissolution wrongfully, to damages for breach of the agreement....

Disotell argues that Stiltner breached the partnership agreement by dissolution; Stiltner maintains that the superior court's conclusion that "neither party was at fault in causing the dissolution of the partnership since ... either party could terminate it at will" was not clearly erroneous. Because neither party argues on appeal that Disotell wrongfully caused the dissolution, he may invoke the rights granted by AS 32.05.330(a).

Disotell argues that the most reasonable and "almost universally accepted" interpretation of AS 32.05.330(a) requires sale of partnership assets, absent a partnership agreement to the contrary. He claims that the Act "makes the policy choice that a sale is the most effective means of determining the fair market value of partnership assets." Although this remedy may seem harsh, he points out that partners are free to make alternative provisions in the partnership agreement. Because the partnership agreement did not address the consequences of dissolution, the statutory provisions govern by default.

We have not previously considered whether liquidation was discretionary under the Act. In *Pieper v. Musarra*, we concluded that Pieper had "failed to demonstrate that the superior court made an error in applying the Alaska Uniform Partnership Act" when it allowed Pieper's partner to purchase her partnership interest.[5] We did not explain the basis for this conclusion. Because no Alaska decisions address the issue, we look to cases from other jurisdictions interpreting the uniform statute.

In *Dreifuerst v. Dreifuerst*, cited by Disotell on appeal, the Wisconsin Court of Appeals, construing a statute identical to Alaska's, held that lawful dissolution gives each partner the right to force liquidation.[6] Other courts have recognized that the winding up that follows partnership dissolution generally involves liquidation of the partnership assets.[7] Indeed, the drafters' official comment on the uniform statute explains:

The right given to each partner [by the statute], where no agreement has been made, to have his share of the surplus paid

5. *Pieper v. Musarra*, 956 P.2d 444, 447 (Alaska 1998).

6. *Dreifuerst v. Dreifuerst*, 90 Wis.2d 566, 280 N.W.2d 335, 338 (App.1979).

7. *See, e.g., Hyta v. Finley*, 137 Idaho 755, 53 P.3d 338, 340 (2002); *Doting v. Trunk*, 259 Mont. 343, 856 P.2d 536, 541 (1993); *Gull v. Van Epps*, 185 Wis.2d 609, 517 N.W.2d 531, 536 (App.1994).

to him in cash makes certain an existing uncertainty. At present it is not certain whether a partner may or· may not insist on a physical partition of the property remaining after third persons have been paid.[8]

Although the language of the Act and the general rule would seem to favor liquidation and cash distribution absent agreement to do otherwise, some courts construing statutes identical to section .330 have refused to compel liquidation.[9]

We decline to follow the line of cases holding that the statute requires liquidation. We hold that the superior court did not err in reading subsection .330(a) to allow it to permit Stiltner to buy out Disotell's partnership interest. Careful reading of the text of AS 32.05.330(a) does not convince us that this subsection absolutely compels liquidation and forbids a buyout. Under appropriate, although perhaps limited, circumstances, a buyout seems a justifiable way of winding up a partnership. The superior court reasoned that a buyout would reduce economic waste by avoiding the cost of appointing a receiver and conducting a sale. Even though there was no ongoing business, the superior court noted that the expense of a sale could total as much as twelve percent of the property's value. This was a valid reason and potentially benefitted both partners. The potential savings were significant. The court's effort to avoid further loss to both partners justifies its decision to offer Stiltner the buyout option. Further, properly conducted, a buyout guaranteed Disotell a fair value for his partnership interest. Liquidation exposed Disotell to the risk that no buyer would offer to pay fair market value for the property. A liquidation sale in which no other buyers participated might have given Stiltner an opportunity to buy the property for less than fair market value, to Disotell's disadvantage.

## C. It Was Error To Permit a Buyout Without Objective Evidence of the Value of Disotell's Partnership Interest.

■ Although it was not error to grant Stiltner the option to buy out Disotell's partnership interest, it was error to permit the buyout without requiring some objective determination of the value of all of the partnership assets, particularly the land and building Stiltner contributed. The superior court used tax appraisals to establish the value of the hotel property and parking lot. The court relied on a report by an expert witness who, to explain the accounting methodology set out in AS 32.05.350, "assume[d], for illustrative purposes only," that the hotel property and parking lot would sell for their tax-appraised values. The tax appraisals were not introduced into evidence. The expert discussed them only hypothetically to illustrate an entirely different point, not as support for an opinion of property values. Neither party introduced evidence of any appraisal. Disotell and Stiltner both acknowledge that neither offered any evidence of value of the partnership assets.

■ Because a buyout is appropriate only if it is for fair market value, and there was no admissible evidence of fair market value, we must remand. It will be necessary on remand to determine the value of the assets before Stiltner attempts to buy out Disotell. The parties may offer any evidence relevant

8. Uniform Partnership Act § 38 cmt. (1914).

9. *See, e.g., Nicholes v. Hunt,* 273 Or. 255, 541 P.2d 820, 827 (1975) ("There is no express provision in [the Uniform Partnership Act (UPA)] which establishes liquidation by sale as the exclusive mode of distributing partnership assets after dissolution."); *see also Logoluso v. Logoluso,* 233 Cal.App.2d 523, 43 Cal.Rptr. 678, 682 (1965) (holding that court has authority to distribute partnership property in kind); *Swann v. Mitchell,* 435 So.2d 797, 800 (Fla.1983) (stating that "where circumstances exist which would render distribution in kind, or another method of disposition, to be more favorable to the interests of the

parties, such a distribution is permissible and desired"); *Creel v. Lilly,* 354 Md. 77, 729 A.2d 385, 399 (1999) (holding that "nothing in Maryland's UPA ... or any of our case law ... supports an unequivocal requirement of a forced sale"); *Rinke v. Rinke,* 330 Mich. 615, 48 N.W.2d 201, 207 (1951) (stating that "it was not the intention of the legislature in the enactment of the [UPA] to impose a mandatory requirement that, under all circumstances, the assets of a dissolved partnership shall be sold"); *Schoenborn v. Schoenborn,* 402 N.W.2d 212, 214 (Minn. App.1987) (holding that partnership statute "does not create an absolute right to a sale").

to the value of the partnership property.[10] The partnership assets include both the hotel property and the parking lot. Contemporaneous appraisals of both will be necessary so that neither party is prejudiced by a fluctuation in the value of one asset. On appeal, Disotell claims that he had no pretrial notice that the superior court would establish a value for the partnership property. The remand will provide Disotell full opportunity to introduce evidence or otherwise address the issue.

**D. It Was Error To Characterize as Partnership Debt Disotell's Obligation To Pay for His Capital Contribution.**

■ Disotell argues that the court erred by characterizing as partnership debt the obligation he incurred to pay for his capital contribution.[11] The parties stipulated that the partners had agreed that the funds from which Disotell would pay for his one-half interest in the hotel property "would only come from the profits of the hotel." The superior court found:

> The partnership obligated itself to pay Stiltner "all the profits from the partnership until he had recovered his original cost basis of the Hotel property." ... Further, the partnership took on Disotell's loan obligation, and promised to pay Stiltner the $137,500. Therefore, this court views the $137,500 as a loan obligation the partnership owes Stiltner.

The superior court classified the $137,500 as a partnership liability, deducting it from the net value of the partnership.

Our primary concern is determining the partners' intent.[12] The partners' litigation stipulation stated that they had agreed that the funds from which Disotell would pay for his one-half interest "would only come from the profits of the hotel." This stipulation is not reasonably susceptible to an interpretation that the partnership assumed Disotell's loan obligation. Stiltner's trial testimony is also inconsistent with any such interpretation:

> THE COURT: ... [P]art of the stipulation, paragraph 7G, essentially says that you were then to receive all the profits of the partnership until you had recovered your original cost basis in the hotel property. Can you explain to me how that piece fits into your agreement?
>
> [STILTNER]: That's my purchase of the hotel.
>
> THE COURT: Mm-hmm (affirmative).
>
> A: That—him paying for that half of the hotel was delayed until the hotel started turning a profit.
>
> THE COURT: Okay.
>
> A: The 150 that he would owe me for a 50 percent interest in the hotel, that was delayed until the hotel started turning a profit.

This testimony implies that the loan obligation was Disotell's, not the partnership's. It is unlikely that Stiltner would have been willing to assume the obligation as a partnership debt and thereby effectively agree to pay half of Disotell's obligation. We conclude, therefore, that it was error to characterize the obligation as partnership debt.

The partners stipulated that Disotell had promised Stiltner: (1) to supply development and construction services on a cost-only basis to construct a hotel and (2) to contribute his

---

10. We have previously questioned the admissibility of tax appraisals. *Bennett v. Artus,* 20 P.3d 560, 565 (Alaska 2001); *Four Separate Parcels of Land v. City of Kodiak,* 938 P.2d 448, 454 (Alaska 1997) (quoting *State v. 45,621 Square Feet of Land,* 475 P.2d 553, 557 (Alaska 1970) (reiterating rule "that evidence of a tax assessment to establish fair market value is inadmissible, since such an assessment is 'notoriously unreliable as a criterion of true value' ")). Nonetheless, tax appraisals are not necessarily inadmissible. *Harrower v. Harrower,* 71 P.3d 854, 862 (Alaska 2003) (holding that superior court's reliance on tax-assessed values was not clearly erroneous).

11. Disotell also argues that the court erred by failing to apply the partnership assets to satisfy the $38,075 (plus interest) liability owed to third-party creditors for the purchase of the parking lot. AS 32.05.350 required that "[i]n settling account between the partners after dissolution," the assets be applied to the satisfaction of the liabilities. The statute required that liabilities owed to creditors other than partners be paid before liabilities owed to partners. AS 32.05.350(2).

12. AS 32.05.350.

interest in the hotel property as capital and to subordinate his interest in profits until Stiltner had recovered his original cost basis in the hotel. The partners explicitly agreed that Disotell would pay for his one-half interest "only" from profits. It is not clear, however, whether the parties contemplated the situation before us when they entered into the agreement. The superior court did not enter any findings as to whether the "repayment only out of profits" provision of the parties' agreement was intended to apply in the event that the partnership dissolved before making profits. We therefore remand the case with instructions to the superior court to determine whether the parties intended the provision to apply in this context.

■ If the superior court finds that the provision was not intended to apply in this situation, it may supply a provision that is reasonable under the circumstances. Under section 204 of the Restatement (Second) of Contracts, "[w]hen the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court."[13] Comment d to Section 204 instructs on how the court should supply an omitted term:

> The process of supplying an omitted term has sometimes been disguised as a literal or purposive reading of contract language directed to a situation other than the situation that arises. Sometimes it is said that the search is for the term the parties would have agreed to if the question had been brought to their attention. Both the meaning of the words used and the probability that a particular term would have been used if the question had been raised may be factors in determining what term is reasonable in the circumstances. *But where there is in fact no agreement, the court should supply a term which comports with community standards of fairness and policy rather than analyze a hypothetical model of the bargaining process.*[14]

In considering what term is reasonable, the superior court should consider the risks and obligations each party assumed. In exchange for Stiltner's contribution of the hotel property to the partnership, Disotell agreed to renovate and build the hotel. The agreement obliged Disotell to supply his development and construction services to the hotel project. Those services were part of the consideration he offered for the one-half interest in the hotel property that he purchased from Stiltner. If Disotell had completed construction of the hotel but the project had proven unprofitable, we doubt that fairness would demand that Disotell nevertheless repay the one-half interest. In reality, however, the partnership dissolved before Disotell fulfilled his obligations under the agreement. The superior court has discretion to decide, therefore, that fairness requires that Disotell only repay the difference between the value of the services he contributed to the hotel property before the project became impossible and the value of what he was supposed to contribute.

### E. The Superior Court Did Not Err by Refusing To Award Damages for Wrongful Dissolution of the Partnership.

■ Disotell claims that he is entitled to recover damages for Stiltner's wrongful dissolution of the partnership. The Act provided that "[w]hen dissolution is caused in contravention of the partnership agreement the rights of partners [include] . . . the right, as against each partner who has caused the dissolution wrongfully, to damages for breach of the agreement."[15] The superior court denied Disotell's damages claim, determining that "neither party was at fault in causing the dissolution of the partnership. . . ." It found that the partnership was "terminated by the inability of the partners to agree on how the project should proceed." We hold that the superior court's fact findings are not clearly erroneous and affirm its decision to

---

**13.** Restatement (Second) of Contracts § 204 (1981).

**14.** *Id.* at cmt. d (emphasis added).

**15.** AS 32.05.330(b)(1)(B).

deny damages for dissolution of the partnership.

The superior court found:

> [T]he partnership dissolved in May of 1998. The dissolution came about when the parties disagreed on how the project should proceed. Disotell wanted to put in the sewer line, but Stiltner disagreed and did not want the sewer line put in before Disotell started getting permits and began the actual renovation project.

■ We review for clear error fact findings determining the causes of dissolution.[16] Per AS 32.05.240, dissolution indicated the point in time when the partners ceased to carry on the business together.[17]

The court's findings are supported by the parties' stipulations. The parties agree that their dispute over the sewer construction caused a "complete breakdown in [their] relationship." Because they disagreed over the necessity of the sewer line, the project could not go forward. Trial testimony also supports the finding that the impasse was not the fault of either party; it resulted from a difference of opinion. It was not clear error, therefore, for the superior court to find that neither party was at fault in causing the dissolution and that the dissolution arose out of disagreement on how the project was to proceed.

### F. It Was Error To Deny Disotell Damages for Stiltner's Post–Dissolution Use of the Property.

■ Disotell also argues that it was error not to award him damages for Stiltner's appropriation of the hotel property after the dissolution. He maintains that he should recover the value of Stiltner's use of the property as determined by its rental value for the months Stiltner occupied it. The superior court gave three reasons for rejecting Disotell's damages claim: (1) "the part-

nership purpose for which Disotell 'ha[d] an equal right with the partners to possess specific property' ended" when the partnership "terminated" in May 1998; (2) any wrongful possession claims were premature because the superior court had "yet to determine the parties' respective rights vis-a-vis the partnership and its assets;" and (3) no order had directed either party to put the property to economic use. The court relied on *Parker v. Northern Mixing Co.* for support.[18] We there affirmed a superior court ruling that the appellee partners were not entitled to the rental value of the partnership property as damages for the appellant partner's post-dissolution possession of the property.[19]

We think that reliance on *Parker* is misplaced. In *Parker,* the superior court had issued a pre-trial order that authorized the partner's continued possession of the property.[20] The order did not require the partner to operate the plant during that period.[21] No such order was issued here.

The determination that Disotell no longer had an equal right to possess the partnership property after the partnership terminated in May 1998 is erroneous. Dissolution does not terminate a partnership; it continues until the winding up of partnership affairs is complete.[22] Because "a partner ... has an equal right with the partners to possess specific partnership property for partnership purposes," it follows that a partner has no right to exclude other partners from the property after dissolution but before termination and distribution.[23] As of December 2001, Stiltner continued to occupy the hotel property. The superior court found:

> Although it is a commercial property, Stiltner has spent most of his time at this 12,500 square foot building, including many nights, and has done so as the sole building occupant. Stiltner testified that he occupies the premises as his residence and has

---

16. *Wyller v. Madsen,* 69 P.3d 482, 485 (Alaska 2003).

17. AS 32.05.240.

18. *Parker v. Northern Mixing Co.,* 756 P.2d 881 (Alaska 1988).

19. *Id.* at 891.

20. *Id.* at 890.

21. *Id.* at 891.

22. AS 32.05.250.

23. AS 32.05.200.

stored personal belongings there, and also has, since May 1998, stored the goods from his former real estate business.

Stiltner is accountable to the partnership for any benefit he derived from his personal use of partnership property. Per Alaska Statute 32.05.160(a),

> Every partner shall account to the partnership for any benefit, and hold as trustee for it any profits derived by the partner without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by the partner of its property.

We therefore remand for determination of the value of Stiltner's personal use of the property.

## IV. CONCLUSION

Because the Act did not prohibit the buyout option, it was not error to grant Stiltner the option to buy out Disotell's partnership interest. It was error, however, to permit a buyout without finding the fair market value of the property, based on admissible evidence. We therefore REMAND. We also REMAND for a determination of what each partner contributed to or took from the partnership. This determination should consider the value of the partnership assets and any difference between the services Disotell was to contribute to the project and those he actually contributed, but should not include the $137,500 loan obligation. It should also take into account the value of Stiltner's personal use of the hotel property during the windup period.