NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 18 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re: EXXON VALDEZ, | Nos. 17-35227, 17-35278 |
| NAUTILUS MARINE ENTERPRISES, INC. and M. THOMAS WATERER, | D.C. No. 3:89-cv-00095-HRH |
| Plaintiffs-Appellants / Cross-Appellees, | |
| v. | |
| EXXON MOBILE CORPORATION and EXXON SHIPPING COMPANY, | **MEMORANDUM**[*] |
| Defendants-Appellees / Cross-Appellants. | |

Appeal from the United States District Court
for the District of Alaska
H. Russel Holland, District Judge, Presiding

Argued & Submitted June 11, 2018
Anchorage, Alaska

Before: THOMAS, CALLAHAN, and BEA, Circuit Judges.

Plaintiffs Nautilus Marine Enterprises, Inc. and M. Thomas Waterer

(collectively, "NME") sued Defendants Exxon Mobil Corporation and Exxon

---

[*] This disposition is not appropriate for publication and is not precedent except
as provided by Ninth Circuit Rule 36-3.

1

Shipping Company (collectively, "Exxon") for damages arising from the 1989 *Exxon Valdez* oil spill. In 2006, the parties entered into a Settlement Agreement, in which Exxon agreed to pay an "Initial Settlement Amount," representing the damages incurred by NME during 1992 and 1993 as a result of the oil spill and a portion of the interest. Because the parties disagreed as to the correct rate of prejudgment interest, a "Supplemental Settlement Amount" ("SSA") was to be paid if and when the district court decided more money was owed. Since then, the parties have been litigating, in state and federal court, issues related to the amount of additional interest owed by Exxon on the damages.

On appeal, NME challenges the district court's determinations that (1) prejudgment interest accrued only through November 1, 2006, and not thereafter, and (2) post-judgment interest accrued only after February 14, 2017, the date of the final judgment, and not before. On cross-appeal, Exxon challenges, as contrary to the best evidence rule, the district court's reliance on certain testimonial evidence to allocate the final interest award. We affirm as to NME's appeal and as to Exxon's cross-appeal.

1. NME argues that the district court erred in limiting prejudgment interest to only that accruing through November 1, 2006. Because our decision turns on the interpretation of the Settlement Agreement, we review this claim de novo. *City of Emeryville v. Robinson*, 621 F.3d 1251, 1261 (9th Cir. 2010).

2

The Settlement Agreement expressly provides for prejudgment interest only through November 1, 2006. It says, in relevant part:

> The period for which interest shall be payable on the sum [owed by Exxon for damages accrued in 1992] shall commence on July 1, 1992, and *continue through November 1, 2006, or the date the Court enters judgment, whichever is earlier*. The period for which interest shall be payable on the sum [owed by Exxon for damages accrued in 1993] shall commence July 1, 1993, and *continue through November 1, 2006, or the date the Court enters judgment, whichever is earlier*.

(Emphasis added). In other words, the agreement provides that prejudgment interest on damages Exxon owed to NME would accrue from the date those damages were incurred until November 1, 2006. By executing the Settlement Agreement, NME agreed to limit its recovery of prejudgment interest to that period. Thus, the district court did not err by failing to award NME prejudgment interest after November 1, 2006.

2. Nor did the district court err by awarding post-judgment interest only after the court's February 14, 2017 final judgment. Again, the Settlement Agreement controls. It provides that: "Post-judgment interest shall accrue on any award by the District Court of additional prejudgment interest . . . pursuant to 28 U.S.C. § 1961." NME argues that post-judgment interest should accrue from a 2007 judgment, which was subsequently reversed and vacated, rather than from the 2017 judgment which now stands. However, in determining "whether [under § 1961] interest should be calculated from the date of a legally insufficient judgment," the Supreme Court has

3

held that "[i]t would be counterintuitive . . . to believe that Congress intended postjudgment interest to be calculated from [a judgment which was later reversed]." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 834, 836 (1990) (citing *FDIC v. Rocket Oil Co.*, 865 F.2d 1158 (10th Cir. 1989), to demonstrate that "postjudgment interest may not be calculated from judgment that was completely reversed"). Therefore, the district court did not err when it awarded post-judgment interest only after the 2017 judgment.

3. The district court may have violated the best evidence rule when it considered the testimony of NME's counsel, Edward Weigelt, in determining how to allocate the SSA. Because the parties are familiar with the facts from which this particular issue arises, we do not recount them in full here. Suffice it to say that NME began this litigation with a co-plaintiff who settled its claims to any additional interest in 2010. After the co-plaintiff's departure from the case, it became necessary for the district court to determine the allocation of the SSA because the 2006 Settlement Agreement had provided that the SSA would be split between the two plaintiffs, pursuant to "further written instructions" signed by both of them. The Settlement Agreement also entitles Exxon to "delay payment" of the SSA, "without any liability for penalties or further interest," until Exxon receives such mutual instructions. Those joint instructions have never been delivered to Exxon. Unfortunately, the Settlement Agreement did not contemplate the possibility of a

4

one-party settlement, so the district court was forced to come up with fair payment instructions. *See Disotell v. Stiltner*, 100 P.3d 890, 896 (Alaska 2004) (quoting Restatement (Second) of Contracts § 204 (1981)) ("When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court.").

Exxon argued that the court should allocate the SSA in the same way the parties allocated the Initial Settlement Amount, because such allocation was pursuant to the only "written instructions" ever given to Exxon by the parties. In discrediting this argument, the district court relied on a declaration from NME's attorney, which asserted that the payment instructions for the Initial Settlement Amount were "based on other business relations between [the co-plaintiffs], including loans and joint fish processing agreements, and also a joint prosecution agreement which included sharing the initial settlement proceeds." The declaration further asserted that "[t]he joint prosecution agreement and sharing obligations between [the co-plaintiffs] were terminated shortly after the settlement." None of these "business relations" or "agreements" were detailed, nor were the agreements produced by NME. Yet the district court concluded that, "[i]n light of this evidence, it would not be reasonable to allocate the [SSA] based on how the initial settlement amount was allocated." By rejecting Exxon's argument based on the terms of

written agreements which were never produced, the district court may have violated the best evidence rule. *See Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1319 (9th Cir. 1986) (quoting *McCormick on Evidence* (3d ed. 1984) § 230, at 704) ("[I]n proving the terms of a writing, where the terms are material, the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent.").

Even so, we hold that the district court's erroneous consideration of the Weigelt declaration was harmless because such consideration did not change the likely outcome, and thus it did not affect Exxon's substantial rights. *See* 28 U.S.C. § 2111 ("On the hearing of any appeal . . . in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."); Fed. R. Evid. 103(1) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party . . . ."). This is because the district court's allocation was justified by other evidence properly before it. For example, the Settlement Agreement itself expressly provided that "[a]ny Supplemental Settlement Amount shall be paid pursuant to further written instructions," suggesting that the parties did not intend for the distribution of the Initial Settlement Amount automatically to guide the distribution of the SSA. And the allocation chosen by the district court was based on (1) figures provided in the Settlement Agreement, and (2) terms of a

6

previously agreed upon "letter agreement" which provided that Exxon agreed to pay NME its actual damages, "together with pre-judgment interest on those sums as provided by law." Thus, it was "reasonable in the circumstances," *Disotell*, 100 P.3d at 896, for the district court to conclude that Exxon had "agreed to pay NME prejudgment interest on the damages that NME actually incurred."

**AFFIRMED.**